NEWELL R. CAMPBELL *vs.* FANNY M. BROWN & others.

Suffolk.　Nov. 20, 1878. — June 25, 1880.　COLT & MORTON, JJ., absent.

If the allegations of a bill in equity to enforce an express trust concerning lands clearly imply that the declaration of trust was not in writing, it may be availed of by demurrer.

A bill in equity, against the administrator and heirs of W., alleged that C., an uncle of the plaintiff, who, at the time of his death, was supporting the plaintiff, then an infant and an orphan, in the family of W., his brother-in-law, and who died without making a will, intended to make the plaintiff " the heir at law of one full half of all his property and estate ; " that on his death-bed he gave direction that one half the same should be the property of the plaintiff ; that the plaintiff's name should be changed ; that W. should be appointed his guardian ; that, after the settlement of C.'s estate, C.'s father, who was sole heir at law, " being desirous of carrying into full effect the intentions and wishes of his deceased son in relation to the plaintiff," at the instance and suggestion of F., who was the owner of one undivided half of certain land in another state, the title to the whole standing in the name of C. alone, and also at the instance of W., who had been appointed guardian of the plaintiff, executed and delivered a deed of this land to F., to C.'s administrator and to W., as copartners ; that neither C.'s administrator nor W. paid any consideration for this conveyance, and that it was not the intention of the parties that W. should take any title therein in his own right, but only in his representative capacity ; that he " never claimed any personal interest in said land, but only as the guardian of the plaintiff, and as holding under said deed in trust for the use and benefit of the plaintiff." *Held*, on demurrer, that the bill did not set forth any ground upon which to raise an express, implied, resulting or constructive trust for the benefit of the plaintiff ; and that the bill could not be maintained.

ENDICOTT, J.　The plaintiff by his bill, which was filed May 31, 1875, seeks to establish his title to certain lands in Michigan, or to the proceeds of the sales thereof, on the ground that, by the conveyance of those lands, in 1859, from John Campbell to George N. Fletcher, James Campbell and William White, as copartners under the name of the " Thunder Bay Lumber Company," the interest conveyed to White, who was then guardian of the plaintiff, vested in him in trust for the plaintiff.　To enforce this trust against the administrator and heirs at law of White is the object of this bill.

Thomas Campbell, the son of John Campbell and uncle of the plaintiff, died in 1857.　At the time of his death he was supporting the plaintiff, then a child of tender years and an orphan, in the family of William White, who was his brother-in-law, having married his sister.　The bill alleges that it was the

intention of Thomas Campbell to make the plaintiff "the heir at law of one full half of all his property and estate;" that on his death-bed he gave direction that one half the same should be the property of the plaintiff; that the plaintiff's name should be changed from Newell Campbell Rogers to Newell Rogers Campbell, and that William White should be appointed his guardian. He also gave directions that the other half of his property, after providing for the suitable support and maintenance of his father and mother, should belong to his brothers and sisters. By reason of his sudden decease, he was unable to make a will.

No trust was created in favor of the plaintiff by these directions or declarations of Thomas Campbell on his death-bed; the allegations in the bill in relation to them clearly imply that they were oral, and, that fact appearing on the face of the bill, it may be taken advantage of by demurrer. *Ahrend* v. *Odiorne*, 118 Mass. 261, 268, and cases cited. As he died intestate and without issue, his father, John Campbell, became his sole heir at law, and all the property, both real and personal, vested in him, subject to the payment of debts. The property having thus come to him by law, he was under no obligation to pay over or convey any portion of it to the plaintiff, or to William White, his guardian. Nor could the plaintiff or White enforce such conveyance or payment against him or against the administrator of Thomas Campbell's estate. In no sense could property thus falling to the heir at law be said to be the property of the plaintiff, or that he had any interest, legal or equitable, therein. After the death of Thomas Campbell, White was appointed guardian of the plaintiff, and the plaintiff's name was changed to Campbell.

The estate of Thomas Campbell was settled by his administrator, James Campbell, and the balance of the personal property, after paying debts and expenses, was paid over to John Campbell, as sole heir at law. Whether there was any other real estate besides the Michigan lands does not appear, but the bill alleges that, after the settlement of the estate, John Campbell, "being desirous of carrying into full effect the intentions and wishes of his deceased son in relation to the plaintiff," at the instance and suggestion of Fletcher, who was the owner of one

undivided half of the lands in Michigan, the title to the whole standing in the name of Thomas Campbell alone, and also at the instance of White, who had been appointed guardian of the plaintiff, executed and delivered a deed of these lands to Fletcher, James Campbell and White, as copartners, by the name of the "Thunder Bay Lumber Company." It is alleged that neither Campbell nor White paid any consideration to John Campbell the grantor for this conveyance, and that it was not the intention of the parties that William White should take any title therein in his own right, but only in his representative capacity; and that he "never claimed any personal interest in said lands, but only as the guardian of the plaintiff, and as holding under said deed in trust for the use and benefit of the plaintiff." It is also alleged that James Campbell took nothing in his own right, but only in trust for his father, mother, and the brothers and sisters of Thomas Campbell. The deed is not before us, but it sufficiently appears that the conveyance was in form to William White in his own right, as a copartner with the other grantees, and contained no reference to the fact that White was guardian of the plaintiff, or took the title for him in any capacity.

Nor is it alleged that the intention or understanding of the parties, that William White took the conveyance as guardian of the plaintiff, arose out of any contract, declaration or agreement in writing. Giving the utmost force to these general and vague allegations, and assuming that there was some understanding between the parties that the conveyance to White was in his capacity as guardian, it was evidently oral, and was argued before us on that ground.

But an oral agreement that a grantee shall hold land, conveyed to him by a voluntary deed absolute in form, in trust for the grantor, cannot create a trust which can be enforced. *Titcomb* v. *Morrill*, 10 Allen, 15. *Bartlett* v. *Bartlett*, 14 Gray, 277. Nor can a trust be created in that manner for the benefit of a third person under such a deed. There certainly was no express trust, or any implied trust, created by the conveyance of John Campbell. See Gen. Sts. *c.* 100, § 19.

Nor does the bill allege facts from which a trust can result to the plaintiff, on the ground that John Campbell, being moved

by the moral obligations resting on him to carry out the wishes of Thomas Campbell, furnished the consideration of his deed in behalf of the plaintiff, and so that there was a resulting trust created in the plaintiff, on the familiar principle that a trust results to the one who advances the money for the purchase of an estate. At best, this is but an inference, arising out of the allegations in the bill, of the intention of the parties that the part conveyed to White absolutely was for the benefit of the plaintiff; and, as such intention cannot create a trust, express or implied, under such a deed, it cannot legally be inferred that John Campbell intended to furnish the consideration in behalf of the plaintiff. Nor is it alleged that White furnished any of the purchase money, or any consideration for the deed, from the money or property of the plaintiff; on the contrary, it is expressly alleged that he paid no consideration for the land. Nor did the plaintiff have any property in the land, which could be furnished for that purpose.

Nor can we find a constructive trust here arising out of the fraudulent conduct of the parties, or either of them, for no such fraud is alleged. John Campbell did not acquire the property by conveyance or will under any assurance that he would convey for the benefit of the plaintiff; nor is it alleged that White professed to act as guardian, and thereby obtained the conveyance for his own benefit in fraud of the rights of the plaintiff; nor that he obtained it without consideration by means of any assurances to John Campbell that he would hold it as guardian. The bill simply alleges that John Campbell made the conveyance, "at the instance and suggestion of Fletcher . . . and of William White, who had been appointed guardian of the plaintiff."

The case, therefore, does not fall within the class of cases which are cited by the plaintiff, where property is acquired by conveyance under such an assurance or promise, or where a guardian or trustee in dealing directly, in his fiduciary capacity, with the property or interests of his *cestuis que trust*, obtains a conveyance to himself, which must enure to the benefit of his *cestuis que trust*.

As we fail to find in the allegations of the bill any ground to raise any express, implied, resulting or constructive trust in this

land for the benefit of the plaintiff, we are of opinion that the demurrer was properly sustained ; and the entry must be

*Bill dismissed, with costs.*

*A. Russ,* (*R. Lund* with him,) for the defendants.

*L. Mason,* for the plaintiff, cited *Dyer* v. *Dyer,* 2 Cox Ch. 92 ; *Milner* v. *Harewood,* 18 Ves. 258 ; *Nesbitt* v. *Tredennick,* 1 Ball & Beatty, 29, 46 ; *Eyre* v. *Dolphin,* 2 Ball & Beatty, 290 ; *Fox* v. *Mackreth,* 2 Bro. Ch. 400, and 2 Cox Ch. 320 ; *Kendall* v. *Mann,* 11 Allen, 15 ; *Glass* v. *Hulbert,* 102 Mass. 24 ; *Blodgett* v. *Hildreth,* 103 Mass. 484 ; *Jackson* v. *Stevens,* 108 Mass. 94 ; *McDonough* v. *O'Niel,* 113 Mass. 92 ; *Jenkins* v. *Eldredge,* 3 Story, 181 ; *Green* v. *Winter,* 1 Johns. Ch. 26 ; *Miller* v. *Pearce,* 6 W. & S. 97 ; *In re Heager's executors,* 15 S. & R. 65 ; *Galbraith* v. *Elder,* 8 Watts, 81 ; *Huson* v. *Wallace,* 1 Rich. Eq. 1 ; *Belcher* v. *Sanders,* 34 Ala. 9.