THOMAS GILPATRICK, and others, in equity *vs.* DANIEL GLIDDEN,
admr. and others.

Kennebec.   Opinion December 27, 1888.

*Equity. Will. Trustee in invitum. Trust ex maleficio. R. S., c. 73, § 11.
"Equally between Heirs." R. S., c. 75, § 1.*

Where a husband's intention of devising his property to his own heirs was
changed and it was devised to his wife by will absolute in form, upon her
assurances that she would only use it during her life and devise the remain-
der to his heirs, on a bill in equity by the husband's heirs; *Held*, that the
wife took the property charged with a trust.

IN EQUITY. On appeal by defendants from a decree in favor
of complainants after hearing on bill, answer and proof.

This was a bill in equity in which the complainants, heirs of Orrin Gilpatrick, of Somerville, sought to recover from the defendants, administrator and heirs of Sarah Gilpatrick, wife of said Orrin, certain portions of his estate which it was charged said Sarah had received, upon a parol trust for them, under the will of her husband; and in violation of her trust agreement had failed in her life time, to convey to them by deed, will or otherwise.

The principal averments in the bill are as follows:

1. That your complainants are the sole heirs at law of one Orrin Gilpatrick, late of Somerville, in the county of Lincoln; that said Orrin was in his life time possessed of certain real estate, to wit: A homestead and farm situated in said Somerville, of the value of five thousand three hundred dollars, ($5,300), and of certain personal property of the value of five thousand three hundred dollars ($5,300), and all of the value of ten thousand six hundred ($10,600), and on the first day of February, 1875, died testate; that said Orrin on the twenty-eighth day of January, 1875, executed and published his last will and testament, here in court to be produced, the first clause of which reads as follows: "I bequeath to my wife, Sarah Gilpatrick, my homestead and all the real estate I now own, and all my personal property;" that said will was duly probated in the county of Lincoln, on the sixth day of April, 1875, and one Benjamin L. Tibbetts, appointed executor thereof; that said Sarah Gilpatrick died on the third day of August, 1883, intestate, leaving real estate to the value of sixteen hundred dollars ($1,600), and personal property of the value of fourteen thousand eight hundred and twenty-one dollars and twenty-six cents, ($14,821.26), and all of the value of sixteen thousand four hundred and twenty-one dollars and twenty-six cents, ($16,421.26), and that her sole heirs are Frank H. Plummer, Belle A. Dexter, Henry E. Plummer and Warren Plummer, four of the respondents herein named; that Daniel Glidden, another respondent herein named was duly appointed as administrator of her estate on the twenty-second day of October, 1883, and qualified as such, and Peter Dunton is the duly appointed and qualified guardian of said Frank H. Plummer.

2.   And your complainants further aver that immediately prior to the making of his said will, and to the conveyance hereinafter referred to, said Orrin expressed to said Sarah Gilpatrick, his desire and intention. to so dispose of all his property, both real and personal, that she might have the use and control of the same during her life; but that at her decease all that remained should absolutely and in fee simple pass to his legal heirs, your complainants, and not to her heirs.   That said Sarah acquiesced in and agreed to said disposition, that there was then and ever after during his life, a perfect understanding and agreement between them that his intentions in this respect should be carried out, and said Sarah then and there promised the said Orrin that, if in his life time he would convey a certain part of said property to her, without an express limitation of the estate to the period of her life, and devise the rest of said property to her also without such express limitation, she would use the same during her life only, and hold the remainder thereof in trust for your orators in fee simple, and that at her death the whole then remaining of the property thus devised from the said Orrin, should pass and be transferred absolutely to the heirs of the said Orrin, your complainants, and not to her heirs, and that she would make in her life time all provisions necessary to that end.

That solely in consequence of said agreement on the part of said Sarah, and in full reliance thereon, the said Orrin was induced to and did then and there convey to said Sarah personal property of the value of five thousand dollars ($5,000), and was induced to and did on the twenty-eighth of January, 1875, make a devise of all the residue of his property, real and personal, of the value of fifty-six hundred ($5,600), to said Sarah, in terms absolute and unqualified, as hereinbefore set forth.

And your complainants further aver that by virtue of said conveyance, the said Sarah received the value of five thousand dollars ($5,000) in personal property from the said Orrin in his life time, and under said absolute devise, she received from his estate personal property of the value of three hundred dollars ($300), and his homestead farm in said Somerville, from the sale of which in 1876, she realized the sum of five thousand three hundred dollars

($5,300), making in all the sum of ten thousand six hundred dollars ($10,600).

That said Sarah had the absolute management and control and use of said property so conveyed and devised during her life time, and that at her death there remained in her hands of the estate of said Orrin Gilpatrick, said ten thousand six hundred dollars ($10,600), received by the said Sarah under the agreement above recited, and the same is included in the property of said Sarah's estate aforesaid; but in direct violation of the agreement aforesaid, and in utter disregard thereof, and in fraud of the estate of said Orrin, and of your complainants as sole heirs thereof, said Sarah made no conveyance of said property by deed, will, or otherwise to your complainants, and made no disposition of the same in order that it might pass to them at her decease, but died without leaving any will or any disposition thereof whatever, and thereby in fraud of your complainants, and against their rights, attempted to pass the same at her decease to her own heirs, the said Henry E. Plummer and Warren Plummer, respondents herein named; and said Henry E. and Warren Plummer, as heirs aforesaid and said Glidden as administrator aforesaid, now hold the same subject to the condition and promise aforesaid in trust for the complainants.

That your complainants on the eighth day of November, 1883, duly demanded in writing of said Glidden as administrator, the payment of said sum so held in trust and have made the same demand upon said respondent heirs, but all said respondents have ever refused to recognize said trust or the rights of your complainants in said property, and claim to hold the same in their own right, in fraud of your complainants, and against their equitable right.

The defendants filed a general answer denying the allegations of the bill, and made special answer as follows:

Said defendants further answering, say that the supposed expression of a desire and intention by said Orrin Gilpatrick to so dispose of all his property that the said Sarah might have the use and control of the same during her life, but that at her decease all that remained should absolutely and in fee simple

pass to his legal heirs, to which it is alleged in the plaintiff's bill the said Sarah acquiesced, if expressed at all, was not in writing, nor was there any declaration in writing signed by the said Orrin or the said Sarah relating to the same ; that the said several supposed agreements, promises, understandings and undertakings in complainants' bill, as respectively alleged, were not any or either of them in writing, nor is there nor ever was there any memorandum or note thereof in writing signed by said Sarah Gilpatrick or any other person by her thereunto lawfully authorized ; that the said supposed trusts alleged in complainant's bill were not created or declared in writing signed by the said Orrin or the said Sarah, or either of them or their attorneys.

The decree was for complainants, and defendants appealed under R. S., c. 77, § 20.

The facts as found by the court appear in the opinion.

*Baker, Baker and Cornish,* for complainants, argued several propositions of fact, and among them, the following :

1. That Orrin Gilpatrick intended that this property should go to the Gilpatrick heirs as distinguished from his wife's heirs.

2. The ultimate restoration of the property to the Gilpatrick heirs was made an indispensable condition to his willing the property to his wife absolutely, and that he persistently refused to make this absolute will until and unless an unqualified promise was first made by her, that in the end what she had left of it, should go to his heirs.

3. That after having long deliberated, she did finally before the will was made, solemnly promise her husband that if he would make the will absolute in terms, and in her favor, she would carry out all the conditions named, and that she did this in order to obtain for herself the advantage of the use and control of all of Orrin's property while she lived.

4. That all the other agreements, i. e. for the monument, the graveyard, the $500 legacy, and the Glidden reconveyance were admittedly not only made, but actually carried out by his wife precisely as agreed, and in defiance of the apparent and absolute terms of the will.

These admitted facts show conclusively, that this apparent will was not his real will but only a nominal one; that the real disposition of his property was to be different from what the will provided; that we must look outside the will itself to discover and carry out the testator's real testamentary purpose; that a solemn agreement by which she should bind herself faithfully to execute his real will was insisted on by him before he would put the property into her hands by a will in form absolute; that his wife understood fully this condition, held it long under consideration, and finally, solemnly agreed to it in order to prevent him from willing the property wholly away from her, &c., that she having admittedly agreed to all the minor conditions which were repugnant to his nominal will but indispensable to his real will, *a fortiori* would he insist on her agreeing to the most vital condition of all namely, that the property which had come down through three generations of Gilpatricks, should in the end be turned over to the Gilpatrick heirs and none other.

Still further, about the time she was executing the other conditions she called in Dr. Tibbetts and had him write and witness her sign what she called a "certification" certifying in terms, that when she was done with this property it was to go equally to his heirs.

It is for the court to construe the terms used by the parties, that Orrin's property at Sarah's death should "go to the Gilpatrick heirs." Whether *per stirpes*, or *per capita*, is for the court to say.

Counsel also argued that this was a trust having its origin in fraud, forced upon the conscience of the party by operation of law. 2 Story Eq. § 1195. To prove the fraud it needs only be shown, 1st, the real purpose of the testator; 2d, the communication of that purpose to the disponee; 3d, the assent and agreement of the disponee, either by language or silence, to faithfully carry out that purpose, notwithstanding the terms of the will; 4th, action, or refraining from action on the part of the testator in consequence of such promise, and on the trust induced by it.

Counsel cited the following cases:

*Drakeford* v. *Wilks*, 3 Atkyns, 539; *Reech* v. *Kennegal*, 1 Ves.

senior, 123; *Barrows* v. *Greenough*, 3 Vesey, 153; *Russel* v. *Jackson*, 10 Hare, 204, 211; *Wallgrave* v. *Tebbs*, 2 Kay and Johnson, 313; *Jones* v. *Badley*, L. R. 3 Chan. Appeals, 362; *Springett* v. *Jennings*, L. R. 10 Eq. 488, 495; *Tee* v. *Ferriss*, 2 Kay and Johnson, 357; *Podmore* v. *Gunning*, 5 Simons, 485; 7 Ib. 644; *McCormick* v. *Grogan*, L. R. 4, H. L., 82; *Norris* v. *Frazer*, L. R. 15 Eq. 318; 331; *Rowbotham* v. *Dunnett*, 8 Chan. Div. 430; *Boyes* v. *Carritt*, 26 Ib. 531; *Strickland* v. *Aldridge*, 9 Vesey, 516; *Owing's Case*, 1 Bland's Chan. 370; *Gaither* v. *Gaither*, 3 Md. Chan. 160; *Hoge* v. *Hoge*, 1 Watts, 163; *Church* v. *Ruland*, 64 Penn. St. R. 422; *Dowd* v. *Tucker*, 41 Conn. 197; *Barrell* v. *Hanrick*, 42 Ala. 60, 73; *Williams* v. *Vreeland*, 32 N. J. Eq. 734; *Glass* v. *Hulbert*, 102 Mass. 24, 39; *O'Hara* v. *Dudley*, 95 N. Y. 403; Browne Stat. Frauds, 103, § 95; *Towles* v. *Burton*, Richardson's Eq. Cases, 146, So. Car. (24 Am. Dec. 414); *Thynn* v. *Thynn*, 1 Vern. 295.

*Spear and Clason, Loring Farr* with them, for defendants.

Plaintiffs admit a will, absolute in form, and seek to engraft a trust upon it, by parol testimony. They fail by their testimony to make out a case. The burden is on them to make out their case, by the most explicit testimony, as such evidence is not regarded with favor, and the court will not act upon it, if it be not strong and irrefragable, or if it be contradicted by other witnesses. Perry's Trusts, 3d ed., Vol. 1, § 147.

*Lantry* v. *Lantry*, 51 Ills. 458, 466, (2 Am. Rep. 314.)

They must also show the party against whom the parol trust is established has prevented the grantor by fraudulent promises, from adopting some other mode of accomplishing his purpose, and induced him to place it in the power of such person to convert the property to his own use.

*Lantry* v. *Lantry, supra.*

Sebra C. Kennedy's testimony shows simply an understanding, a biased opinion and not an agreement. Mrs. Kennedy speaking of the alleged agreement says she did not hear Sarah Gilpatrick make any answer,—nothing definite at the time. Doctor Tibbetts does not testify to any agreement; says he did not hear any. The certificate which he made twelve years ago for her to sign, and quotes verbatim, shows no such agreement as alleged by

·plaintiffs. It reads "I, &c., do hereby certify that it is my wish that the property that was left me by Orrin Gilpatrick my husband should be equally divided between his heirs at my decease." She treats the property as her own, she "certifies" that it is her own and not her husband's wish that the property left, not to Orrin Gilpatrick's heirs, or the Turner heirs, but to herself shall be divided, &c. The conversations which this witness relates, show no agreement for the property to go, as "he wanted it;"— indicate no contract, unless the court supplies a deficiency in the testimony. Because one party wants a thing done is it evidence that the other party has agreed to do it? Is it evidence of inducement or fraud? They were not assertions of facts, but made merely "to bring somebody out."

The mistake of the witness about the date of the bill of sale is important in proving his total forgetfulness, or wilful perversion of facts. This kind of testimony is not sufficient basis for engrafting a trust upon a will. It is unsatisfactory testimony. *Snelling* v. *Utterback*, 1 Bibb. (Ky.) 609; *Kimball* v. *Morton*, 1 Halstead Ch. (N. J.) 26; *Hoge* v. *Hoge*, 1 Watts, 163.

Plaintiffs' case is deficient because, 1st, this species of evidence is regarded with disfavor; 2d, no witness pretends to have heard any agreement between the parties; 3d, no witness ever heard the husband state, in detail, what arrangements he and his wife had made, except Zubra Gilpatrick; 4th, no witness has attempted to show that he was in any way diverted from making his will just as he desired, by anything said or done by his wife; 5th, no testimony to any assent, on the wife's part, to carry out any wish or agreement.

Zubra Gilpatrick's testimony is in opposition to the agreement set up by plaintiffs' bill. Thomas Gilpatrick was to "have the homestead and carry it on as he liked." This disposes of about one-half of the property and hence cannot be the trust set up ;— by that the whole was to go to the heirs. Notice the language : "he would like to have Thomas have the farm, &c."

No arrangement had been made with Thomas but he would like to have him come if he desired to. It is more probable he would leave the remainder to the widow of his only son, to whom he

said "yes, you are to have the remainder" than to the Turner heirs. If the court are to draw an inference from the indefinite and uncertain testimony would it not be that she was to have all the personal property?

No trust can be charged upon real estate by parol. R. S., c. 73, § 11.

*Glass* v. *Hulbert*, 102 Mass. 24; *Flint* v. *Sheldon*, 13 Mass. 443, 448.

The real question in this case is whether a will executed, with all the formalities of law, explicit and clear in its terms, shall stand as the expression of the last will of the testator, as to the disposition of his property, or whether, when he can no longer speak, it shall be subject to attack and overthrow by misunderstanding, perjury and fraud. Otherwise, the familiar principle that the testator's intention is to be gathered from the whole instrument, it will be necessary for him to exclude in writing from his will, every intention which might be proved, outside the will itself, by parol testimony, in order to avoid some kind of a trust which perjury and fraud may conjure up.

*Mr. Farr*, in behalf of the respondents argued that evidence of intentions, expressed so long a time before making his will, is inadmissible. *Gerry* v. *Stimson*, 60 Maine, 186, 188.

The intentions testified to, are not those alleged in the bill. They are not intentions expressed to the wife by the husband, or by those to whom he expressed them. Proof of the allegations in the first charge of plaintiffs' bill not proved,—much less "with proof of the strongest character." Whart. Ev. § 1037. Best's Ev. Intr. § 24.

The evidence to maintain the allegations, in the second charge, arises only from loose, and unreliable testimony. Evidence of an understanding is not proof of a promise. It must be clear, strong, unequivocal, unmistakable. 2 Pom. Eq. § 1040; 2 Devlin's Deeds, § 1185.

All the things which the husband wanted the wife to do, she did except one, and that she attempted to do. But that one thing she was not expected to do alone. There was another whose acts and conduct were to correspond to her reasonable expectations.

Thomas Gilpatrick was to have the home place on condition of taking care of things, and living there with her, and making her home comfortable. For this reason it was not put in the will. He failed to perform the condition. This agreement and understanding which the widow attempted to carry out is inconsistent with that alleged in the bill.

There is no evidence what remainder,—whether of his own property or his wife's—the testator meant.

If his final intentions were put into his will, that ends this case depending on an alleged contract, *de hors* the will. There is no evidence that the husband, just prior to making his will, intended to devise his property to his heirs to the exclusion of his wife. If he made no will, one half of his personal estate would have gone to his wife by law. The other half has been expended as he directed. What she would have received, without or in spite of a will, or what was transferred prior to the will, does not enter into the supposed understanding, and cannot be used as the foundation of an equity suit.

The only ground upon which the trust set up can be rested, is actual intentional fraud. 1 Pom. Eq. § 1054. The mere breach of promise to convey is not enough; there must be some actual fraud in procuring a deed or devise to one's self. 1 Perry's Trusts, § 181.

The trust alleged in the bill is not a trust arising or resulting from implication of law under the statutes. Pom. Eq. *supra*, §§ 1030, 1031; Perry's Trusts, § 124; *Lantry* v. *Lantry*, 51 Ills. 458.

The court will not abrogate an explicit and time honored statute. R. S., c. 73, § 11; *Olliffe* v. *Wells*, 130 Mass. 221; *Moore* v. *Stinson*, 144 Mass. 594; *Farnham* v. *Clements*, 51 Maine, 426; *Gerry* v. *Stimson*, 60 Maine, 186, 188; *Stevens* v. *Stevens*, 70 Maine, 92; *McLellan* v. *McLellan*, 65 Maine, 500; *Norris* v. *Laberee*, 58 Maine, 260; *Baker* v. *Vining*, 30 Maine, 121, 126; *Philbrook* v. *Delano*, 29 Maine, 410.

As to the law: Most of the English cases are against the Mortmain Act, or relate to personal property.

In *Barrow* v. *Greenough*, there was a writing. The decision reads, "I am very happy that I have under the defendant's hand

writing the particulars of the conversation, so that there can be no doubt about it, for this evidence shows how dangerous it is to determine on parol evidence only. If it rested on that alone the testator's intentions could not have been effectual; * * * if it had not been for this written paper, I should have hesitated very much about admitting evidence against a written will."

Under the Mortmain Act in England, and a similar statute in New York, where parties attempt to establish trusts against the law, courts admit evidence to defeat the attempt. In this case the parties are alleged to have established a trust, and the court is asked to admit parol evidence to render it valid in spite of the law.

Our statutes concerning trusts have not been construed to allow a trust to be established on a parol promise, at least in America, with perhaps one exception. *Flint* v. *Sheldon*, 13 Mass. 443, 448.; and *Goodwin* v. *Hubbard*, 15 Mass. 210, are against it.. *Olliffe* v. *Wells*, *supra*, and the cases there cited in tone are against it. Connecticut and Ohio have no such statute. When *Hoge* v. *Hoge*, 1 Watts, 163, was decided, Pennsylvania had no statute of frauds, nor statute concerning trusts. *Brooks* v.. *Chappell*, 34 Wis. 405, relates to legacies, and did not affect title to lands. In *Barrell* v. *Hanrick*, 42 Ala. 60, the court find as an inference that the devisee suggested and advised the devise. *Pembroke* v. *Allenstown*, 21 N. H. 107 ; *Graves* v. *Graves*, 29 Ind.. 142; *Farrington* v. *Barr*, 36 Ib. 86 ; *Moore* v. *Moore*, 38 Ind. 387,. are against establishing such a trust against the statute.

Parol evidence is admissible to establish a fact from which the law will raise or imply a trust, but it cannot be received to prove any declaration of a trust, or any agreement of the parties for a trust, without violating the statute.

There should be no dispute as to the evidence of the facts which the the court will find. That should be such, that different courts equally honorable could not come to different conclusions.. Not a preponderance of evidence; but evidence clear, certain, explicit, undisputed. Otherwise, it would not be merely a curtailing of the statute, but ignoring the policy and purpose for which the statute was passed.

VIRGIN, J.    The plaintiffs are the nephews and niece and next of kin of the late Orrin Gilpatrick and the defendants are the administrator and next of kin of the widow of Orrin, neither of whom left any children.

The plaintiffs seek to establish their title to the proceeds of certain real and personal estate, on the ground that Orrin, having expressed to his wife his intention of leaving all his property to his heirs (plaintiffs) was induced by her to sell and will it to her in form absolute, in sole consequence of his reliance upon her assurance that she would use it during her natural life only and seasonably transfer the remainder to his own heirs; that she did not fulfil her agreement, but died intestate, whereupon the property descended to her heirs instead of his; and that by reason of the premises it became vested in her in trust,—to enforce which trust is the object of this bill.

The presiding justice, who saw and heard all of the witnesses testify, found the facts in favor of the plaintiffs, which finding we should be slow to reverse unless clearly satisfied that it was erroneous.    *Young* v. *Witham*, 75 Maine, 536.    But after a very careful examination of the stenographer's report of the direct and uncontradicted testimony of the Gilpatricks' life-long, trusted friend and his wife and daughter in whose family Mrs. G. lived during four years of her widowhood; of their family physician of many years, their business adviser, scrivener and executor of Mr. G.'s will and the writer at her dictation of what Mrs. G. called a "certification;" of the neighbor who purchased the hay during the last ten years of Mr. G.'s life and of her thereafter,—all disinterested witnesses,—whose testimony of Mr. G.'s frequent expressions to his wife, for months before his decease, of his desire and intention that his property should go to his own heirs; of her final agreement to transfer the remainder thereof "after she was done with it," provided he would give it to her absolutely; of her frequent and freely expressed admissions of such agreement and of her own construction of it as evidenced by her own acts in executing all the stipulations thereof except the final transfer of the remainder of the property to his heirs and putting even that in writing signed by her; and of the peculiar instructions of Mr. G.

as to the phraseology of the will,—not to use the word "give,"—we are fully satisfied that the justice's finding of facts was correct; and that the following, among other facts are clearly established:

That Orrin Gilpatrick died in February, 1875, possessed of a farm which came down to him from his paternal grandfather and of other property all of the value of more than $9000, and which he desired to go to his heirs; that his widow died in 1883 leaving property which she had owned in her own right, consisting chiefly of money invested in town securities, amounting to some $5000; that they left no children, but a widow of a deceased son; that they always kept their individual property separate; that for several months before his decease, they had frequently discussed the mode of the disposition of his property, and, as she had so much in her own right, he frequently expressed to her his intention of giving his to his own heirs; that, a short time before his death, she finally induced him to give some of the personal property and will the remainder of his estate to her in form absolute upon her assurance that she would only use it, if necessary, during her natural life, pay their daughter-in-law $500, reconvey certain real estate, the legal title of which he held, to one Glidden, erect a monument in, and keep in repair their private cemetery, and finally, seasonably transfer all that remained to his heirs; that if she had not given her husband such assurance and if he had not confidently relied upon her performance of it, he would not have executed the will nor given her the personal property; that she promptly performed all of the terms of her agreement except the final transfer of the remainder which she purposely omitted to do, although she had expended but a comparatively small portion of the property during her life.

Nor do we entertain any doubt of the soundness of the law on which the decree appealed from was based, viz: a constructive trust impressed upon the property and the donee and devisee converted into a trustee *in invitum*, although not so denominated in the paper title, and although the statute expressly provides: "There can be no trust concerning lands  *  *  unless created or declared by some writing signed by the party or his attorney." R. S., c. 73, § 11.

Fraud is infinite in its varieties and forms; and while, as Lord Hardwicke said, "the court very wisely hath never laid down any general rule beyond which it would not go lest other means of avoiding the equity of the court should be found out," (*Lawler* v. *Hooper*, 3 Atk. 278), still rules have been established governing certain classes of cases involving the element of fraud,—such as that the fraudulent suppression of a cause of action or of a will is a good answer to the statute of limitations, *Deake Appellant*, 80 Maine, 50, that married women and infants shall not take advantage of rules made for their protection to perpetrate fraud, Perry Tr. § 170; and that the statute of frauds shall not be allowed to bar a decree for the specific performance of an oral agreement for the sale and conveyance of land when there has been such a part performance by the party seeking as equity recognizes. *Pulsifer* v. *Waterman*, 73 Maine, 233; *Woodbury* v. *Gardner*, 77 Maine, 68. And while the precise question involved in the case at bar has never before arisen in this state, the cases last cited are analogous thereto in principle; and the universally recognized ground on which the decisions rest is,—that to permit the statute of frauds to be used as a bar to the compulsory performance of such an agreement thus partly performed, would practically authorize a statute, enacted for the purpose of preventing a fraud, to become the veriest instrument for perpetrating or protecting a fraud.

So for like reason, when one obtains the legal title to real or personal estate, either by will or otherwise, under circumstances which render it unconscientious for him to retain it for his own benefit while in fact another is entitled to it, or to some interest in it, equity secures to the latter his right, not by disregarding the former's legal title but by imposing on him the duty of holding and using his title for the real beneficiary.

Applying the principle to the facts in this case: Mr. G. was persuaded by his wife to change his intention of leaving his property to his own heirs and to give it to her by reason of her express promise to give the remainder to his heirs, which she omitted to do. His will was regularly probated and the legal title passed thereby to her. His heirs claim that remainder because her conduct operated as a fraud upon her husband as well

as upon them, and that by reason thereof she held the property impressed with a trust and she made a trustee. Equity does not interfere with the will. That remains unchallenged. Nor does it assume to set aside the statute of frauds which the defendants invoke. But on account of her conduct in procuring the legal title to herself, equity does declare that she cannot conscientiously hold it or its proceeds for her own exclusive benefit, and imposes on her conscience the obligation to hold all she did not use during her life for the benefit of her husband's heirs (plaintiffs) as the equitable owners thereof, and the additional obligation of perfecting their ownership by will or otherwise. But as she has deceased, equity can reach the personal or the proceeds of both real and personal in the hands of her personal representatives and any of the real estate in the hands of any subsequent holder who is not a *bona fide* purchaser thereof without notice holding it relieved of the trust. Pom. Eq. §§ 431, 1053.

We do not mean, however, that it is essential to the upholding of such a trust that a devisee should have been an active agent in procuring the devise to be made in his favor, for the great current of English authority during the last two centuries as well as that of this country, holds that, if either before or after the making of the will, the testator makes known to the devisee his desire that the property shall be disposed of in a certain legal manner other than that mentioned in the will, and that he relies upon the devisee to carry it into effect; and the latter by any words or acts calculated to, and which he knows do in fact cause the testator to believe that the devisee fully assents thereto and in consequence thereof the devise is made, but after the decease of the testator the devisee refuses to perform his agreement,—equity will decree a trust and convert the devisee into a trustee, whether, when he gave his assent, he intended a fraud or not,—the final refusal having the effect of consummating the fraud.

As this is the first case of this kind that has ever arisen in this state and we have the English and American cases before us, we mention some of them.

Thus as early as 1678, where a father, being about to change his will lest there might not be assets enough besides the lands

settled on his son to pay certain legacies to his daughter, was assured by the son that he would pay them in case of deficiency of assets if the will were not changed,—the son was held to his promise—the chancellor remarking that it was the constant practice of the court to make such decrees on such promises. *Chamberlaine* v. *Chamberlaine*, 2 Freem. 34; 2 Ab. Eq. Cas. 43.

So in 1684, where her son promised the executrix that if she would obtain a new will naming him as executor he would hold it in trust for her—which she did—the lord-keeper decreed the trust notwithstanding the statute of frauds. *Thynn* v. *Thynn*, 1 Vern. 296.

So in 1689, where a copy-holder, intending to leave the greater part of his estate to his godson, was persuaded by his wife, on her promise to carry out his intentions, to give the whole to her, the court, notwithstanding the statute, enforced the trust. *Devenish* v. *Baines*, Ch. Prec. 3.

In *Oldham* v. *Litchfield*, 2 Vern. 506, 2 Ab. Eq. Cas. 44 (1705), lands were charged with an annuity, on proof that the testator was prevented from changing them in his will by a promise of payment by the devisee.

Again in 1747, a testatrix having given a bond for £360 to the plaintiff, afterwards by a new will gave it to another on the latter's promise to give it, at her own decease, to the plaintiff, and the performance of the promise was decreed against her representatives, against the interposition of the statute of frauds, Lord Ch. Hardwicke, said : "I know of no case where the court has not decreed it, whether such an undertaking was before the will or after.   *   *   This is not setting up anything in opposition to the will, but taking care that what has been undertaken shall have its effect.   A will being ambulatory, if the testatrix has a conversation with a legatee who promises that in consideration of the testator's disposition in her favor she will do an act in favor of a third person, the testatrix lets the will stand, it is very proper the person who undertook to do the act should perform; because I must take it if she had not so promised, the testator would have altered the will." *Drakeford* v. *Wilks*, 3 Atk. 539.

The next year, a residuary legatee, who satisfied the testator

that he need not change his will in order to give a nephew £100 for he himself would pay it,——was held trustee, and a trust imposed on the residue of the assets. Lord Ch. Hardwicke, said : "The court will not suffer the statute to protect fraud so as that any one should run away with a benefit not intended. * * There is a breach of promise, but attended also with fraud upon the testator as well as the plaintiff, by representing as if there was no occasion to alter the will." *Reech* v. *Kennegal,* 1 Ves. 123; S. C. Amb. 67; 1 Wils. 227.

So in 1796, instead of changing his will with the avowed intention of increasing the annuity to his wife, the testator told his residuary legatee he would "leave it to his generosity to pay it as he promised,"—and a trust was imposed on the residue of the assets. The master of the rolls said : "The word 'generosity' cannot be construed to take away the effect of a solemn desire of the testator coupled with the promise of the defendant. The defendant had no intention of fraud at that time, for he desired the testator to make a new will. Leaving it to his 'generosity' is leaving it to his honor and conscience. * * The question is, whether by reposing that trust in the defendant, the testator was not prevented from making a new will. The defendant ought to have told him that, if he did not make a new will, he would not do it. Instead of that he promised to do it, upon which the testator refused to make a new will." *Barrows* v. *Greenough,* 3 Ves. 152.

In 1804, Lord Eldon said : "If a father devises to his youngest son who promises that if the estate is devised to him, he will pay £10,000 to the eldest son, this court would compel the former to discover whether that passed by parol; and if he acknowledged it, even praying the benefit of the statute, he would be a trustee to the value of £10,000." *Strickland* v. *Aldridge,* 9 Ves. 516.

And the like result is brought about by the silent assent of the devisee to a like proposal of the testator. *Byrn* v. *Godfrey,* 4 Ves. 6, 10; *Paine* v. *Hall,* 18 Ves. 475.

In 1836, natural children of the testator alleged in substance in their bill that the testator's wife promised, in consideration of his giving to her the whole estate, to leave it to them at her decease, upon the faith of which he did it. Shadwell, V. C., said:

"My opinion is that if it were perfectly clear that the state of circumstances took place which the plaintiffs allege, they would be entitled to the relief they ask." *Podmore* v. *Gunning*, 7 Sim. 644, 654.

In 1852, a residuary estate was devised with an oral intimation by the testator to the devisee that he had confidence that he would carry out the testator's intentions which devisee well knew and assented to,—and the devisee was held a trustee. Lord Justice Turner, V. C., in discussing the question of the devisee's undertaking, said : "The true test of the answer to this question is this,—would the testator have left the property to the defendant if he had stated, in answer to that question, that he would not carry out the disposition which the testator intended to effect through the medium of the trust. No one can doubt that if the defendant had stated that he would not carry out such intentions, the disposition in his favor would not have been found in the will." *Russell* v. *Jackson*, 10 Hare, 204, 211.

In the often cited case of *Wallgrave* v. *Tebbs*, 2 K. & J. 321, the joint devisees of real estate denied that they ever knew anything of the testator's intentions till after his decease, but an unsigned letter written by him expressed his confidence in their application of the devised property in accordance with his desires,—Wood, V. C., (then Lord Hatherly) upheld the trust, saying : "Where a person knowing that a testator in making a disposition in his favor, intends it to be applied for purposes other than his own benefit, either expressly promises, or by silence implies, that he will carry the testator's intention into effect, and the property is left to him on the faith of that promise or undertaking, it is in effect a case of trust; and in such case, the court will not allow the devisee to set up the statute of frauds, or, rather the statute of wills, by which the statute of frauds is now in this respect superseded ; and for this reason,—the devisee, by his conduct, has induced the testator to leave him the property, and, as Lord J. Turner says in *Russell* v. *Jackson, supra*, no one can doubt that if the devisee had stated that he would not carry into effect the intentions of the testator, the disposition in his favor would not have been found in the will. But in this, the court does not

violate the spirit of the statute; but for the same end, namely, the prevention of fraud, it ingrafts the trust on the devise, in order to prevent a party from applying property to a purpose foreign to that for which he undertook to hold it."

In 1867, in *Jones* v. *Badley*, L. R. 3 Eq. 635, 652, Lord Romilly, M. R., quoted the foregoing extract entire and declared the law to be therein very "accurately and very comprehensively stated." On the appeal in 1868, Lord Cairns quoted the same extract and pronounced it "the clear and felicitous exposition of the law." *Jones* v. *Badley*, 3 Ch. Ap. 362.

And in 1878, in *Rowbotham* v. *Dunnett*, L. R. 8 Ch. Div. 430, 436, Malins, V. C., made the same quotation and pronounced the law "correctly laid down," but dismissed the bill for want of proof.

In 1869, in *McCormick* v. *Grogan*, L. R. 4 H. L. 82, where under the peculiar circumstances of the case no trust was decreed, some of the language of Lord Westbury in the fore part of his opinion, where he says the court "must see that personal fraud, a *malus animus* is proved, &c., has sometimes been urged by defendants as requiring more than the authorities already cited; but when it is considered in connection with the facts before him and with his own illustrations in the same opinion, that erroneous view vanishes. After discussing the *rationale* of the principle of dealing with the statute of frauds and of wills, he said: "If an individual on his death-bed, or at any other time, is persuaded by his heir-at-law or his next of kin, to abstain from making a will; or if the same individual having made a will, communicates the disposition to the person on the face of the will benefited by that disposition, but at the same time says to him that he has a purpose to answer which he has not expressed in the will, but which he depends on the disponee to carry into effect, and the disponee assents to it, either expressly, or by any mode of action which the disponee knows must give to the testator the impression and belief that he fully assents to the request; then undoubtedly, the heir-at-law in the one case, and the disponee in the other, will be converted into trustees, simply on the principle that an individual shall not be benefited by his own personal fraud."

Such, in 1873, was the view of Sir James Bacon, V. C., in *Norris* v. *Frazer*, L. R. 15 Eq. 318, 330, where a husband and wife were devisees of the bulk of the property of a testator who expressed a desire that an annuity of £300 should be provided for a third person which the wife testified she promised and the husband assented to. The vice chancellor said: "Mr. Swanston has read particularly from Lord Westbury's judgment in *McCormick* v. *Grogan*, the condition as to what the court has to see proved before it admits any such claim, and he says it must be proved that there was direct personal fraud. * * If the statement made by Mrs. Frazer (one of the devisees) be true, then a more direct, a more distinct personal fraud could not be committed than for Mrs. F. to refuse to perform that promise which she made to the testator on his death-bed."

To the same general purport are *Riordan* v. *Barron*, 10 Ir. Eq. Rep. 645, and *Fleetwood's Case*, 15 Ch. Div. 594, 606 (decided in 1880). In the latter case, Hall, V. C., after reviewing numerous cases, said: "The testator, at least when his purpose is communicated to, and accepted by the proposed legatee, makes the disposition to him on the faith of his carrying out his promise, and it would be a fraud in him to refuse to perform that promise."

Once more in the English courts in 1884, in *Boye's Case*, 26 Ch. Div. 531, 535, in speaking of this class of cases, Kay, J., said: "In these cases the court has compelled discovery and performance of the promise, treating it as a trust binding on the conscience of the donee, on the ground that otherwise a fraud would be committed, because it is presumed that if it had not been for such promise the testator would not have made or would have revoked the gift," citing cases *supra*.

This general doctrine, so long and so thoroughly established in England, has been adopted in several of the states and fully recognized in others.

Thus in 1803, a father was induced to make no will and let his Maryland property descend to his eldest son on the latter's promise to convey the same to his younger brother provided, as was expected, he himself succeeded to certain property in Scotland, which he did subsequently inherit,—and the court enforced the promise. *Browne* v. *Browne*, 1 Harr. & J. (Md.) 430.

In *Owing's Case*, 1 Bland's Ch. 370 (17 Am. Dec. 311, 317, 338) after stating the English doctrine of enforcing oral promises of devisees, Bland, Ch., said: If in such cases the person beneficially interested "could not have the promise enforced, his loss would be irretrievable. He making the promise would be suffered to frustrate the intention of the deceased, to practice a fraud with perfect impunity; and the statute of frauds, if allowed to apply, would be made to operate for the protection, instead of the prevention of fraud."

In Pennsylvania in 1832, the testator's brother was made his residuary devisee on his promise to apply the property for the benefit of the testator's illegitimate son, and a trust was decreed. Gibson, C. J., said: "Equity turns the fraudulent procurer of the legal title into a trustee to get at him. * * A mere refusal to perform the trust is, undoubtedly not enough, * * It seems to be requisite that there should appear to have been an agency, active or passive in procuring the devise," and, after citing several of the English cases, said: "If the testator was induced by the promise of his brother, much more if by his suggestion, to believe that a devise to him was the most prudent plan of securing the estate to his illegitimate son, it can not be said that a breach of confidence thus reposed in him, was intended to be protected by this statute." *Hoge* v. *Hoge*, 1 Watts, (Pa.) 163, 215, 216. To the same purport are *Jones* v. *McKee*, 3 Pa. St. 496, S. C. 6 Pa. St. 425, and *Church* v. *Ruland*, 64 Pa. St. 432; Schultz's Ap. 80 Pa. St. 396.

The English rules have also been adopted and enforced or fully recognized in the following cases: *Williams* v. *Fitch*, 18 N. Y. 546, *O'Hara* v. *Dudley*, 95 N. Y. 403, a full discussion of the whole subject. *Dowd* v. *Tucker*, 41 Conn. 197; *Williams* v. *Vreeland*, 32 N. J. Eq. 734; *Glass* v. *Hulbert*, 102 Mass. 24, 39, 40; *Campbell* v. *Brown*, 129 Mass. 23, 26; *Olliffe* v. *Wells*, 130 Mass. 221, 224.

The plaintiffs are the nephews and niece of Orrin Gilpatrick's children of his two deceased sisters, Thomas Gilpatrick being the only child of one of the sisters and the other plaintiffs, children of the other. If the property should go to them according to the

law of descent, Thomas would be entitled to one-half "by right of representation" and the other half to the other plaintiffs equally. R. S., c. 75, § 1. Mr. G. invariably spoke of its going to his heirs generally. Mrs. G.'s certificate expressed her desire that "it should be equally divided between his heirs,"—which having been written soon after her husband's decease, may be considered as probably expressing the real understanding between her and her husband. Such a division would also seem equitable.

We are of opinion, therefore, that the bill be sustained, and that the plaintiffs have judgment against the goods and estate of Sarah Gilpatrick in the hands of the administrator on her estate for the sum of $9508.06, less the sums paid to Zubra Gilpatrick, the amount paid for erecting the monument and caring for the cemetery and the commissions paid to the executor,—which amount, if not agreed upon by the parties, to be ascertained by a master.

*Decree accordingly.*

PETERS, C. J., WALTON, DANFORTH, EMERY and HASKELL, JJ., concurred.