### GRAVES *v.* GRAVES *et al.*

*(Supreme Court, General Term, Fourth Department.* February 11, 1890.)

1. WILLS—CONTRACT WITH DEVISEE—PROMISE TO DISTRIBUTE PROPERTY.

On an issue whether a devise made by plaintiff's father to his wife was in reliance on her agreement to divide the same equally among their children, the attorney who drew the will testified that, before the will was signed, testator declared to his wife he wanted to divide his property equally among his children, and had willed it all to her, and that she was to divide it between them as they might thereafter agree, and that after her assent the will was executed. The witness admitted that on a settlement of a judgment against plaintiff he had stated that the widow was the absolute owner of the property, and that plaintiff would never get anything unless she chose to give it to him. Other witnesses testified to statements of the widow that she intended the property to be divided as her husband "wanted it." Evidence was also given of a partial division of the property among the children. *Held,* that the devise was made on testator's request to his wife to divide the property at or before her death among their children, and on her promise to do so.

2. SAME—EVIDENCE—DECLARATIONS.

The declarations of the widow as to the distribution of the property were competent evidence, not only to corroborate the testimony of the attorney, but to show what the arrangement in fact was.

3. WITNESS—CREDIBILITY—EXPLANATION OF STATEMENTS.

To explain the statement by the attorney at the time of the compromise of the judgment against plaintiff, the latter offered to show by the attorney that the settlement was made on the voluntary offer of the holder of the judgment. *Held,* that the testimony was improperly excluded; for, if the statement was casual, and not to induce a settlement, its bearing on the credibility of the witness would be very different.

4. APPEAL—REVIEW—OBJECTIONS NOT RAISED BELOW.

An objection to testimony on the ground that it was a privileged communication between attorney and client cannot be raised for the first time on appeal.

Appeal from special term, Jefferson county.

Action by Silas Graves against Lula Graves and another. Plaintiff appeals from a judgment dismissing his complaint.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Levi H. Brown,* for appellant. *Watson M. Rogers* and *John C. McCartin,* for respondents.

MERWIN, J. On the 2d January, 1884, Peleg K. Graves, then a resident of Ellisburgh, in the county of Jefferson, died leaving, him surviving, his widow, Jennette Graves, and, as his only heirs at law, five children, of whom the plaintiff is one. On the 1st January, 1884, he made a will, in due form, in and by which he gave all his property, real and personal, to his wife, Jennette, absolutely, and appointed her executrix with full power of sale. This will was admitted to probate on the 18th January, 1884. The real estate consisted of four farms, one of which was called the "Home Farm," and is in controversy in this action. There was also personal property about sufficient to pay the debts. About the 4th March, 1886, Jennette Graves, as the court below found, executed and delivered, individually, deeds of all the real estate except the home farm to the heirs of Peleg K. in equal shares, taking into account, and charging each, such advances as the testator had made to them, severally, in his life-time. On the 7th August, 1886, Jennette died, having on the 10th June, 1886, subscribed a paper purporting to be her last will and testament, sealed and attested by two subscribing witnesses, in form as required by the statute for the execution of wills, and which instrument imports on its face to be a legal and valid will of real and personal estate. By this will, Jennette Graves gave to the defendant Lula Graves, her grandchild, the home farm, above referred to; and the balance of her property she gave in equal shares, to the five children of herself and said Peleg K. Lula Graves is an infant under the age of 14 years, and the daughter of the defendant Charles Graves. The claim of the plaintiff is that Peleg K. Graves, before he

executed his will, and on that occasion, told his wife that he wished to divide all his property among his children equally, giving her ample support therefrom during her life, but that he was then too sick and unable to adjust his affairs, and make such division, and proposed to her that he would will all his property to her, and she should take it, and make such equal division, suggesting that she retain the use of the home farm for herself, and divide that by her will; and that she, in response, accepted such proposition, and promised him to make such division, and that thereupon he, in reliance thereon, executed his will. The special term declined to find the facts in accordance with this claim, and in its decision found "that it does not appear that any agreement was made between said testator and the said Jennette Graves by which she was to divide all said testator's property equally between the said sons and daughter, or to take or hold the same for any trust purpose whatever, or that the provisions in said will were in any manner qualified or affected by any parol arrangement or agreement between the testator and the devisee, Jennette Graves." Exception was duly taken.

In *Re O'Hara*, 95 N. Y. 403, it was held that where a person, even by silent acquiescence, encourages a testator to make a devise or bequest to him with a declared expectation that he will apply it for the benefit of others, this has the force and effect of an express promise so to apply it, as, if he does not intend so to do, the silent acquiescence is a fraud; and, in case of such a declared intention and promise, if the testator has named some certain and definite beneficiary, capable of taking the provision intended, the law fastens upon the devisee or legatee a trust which equity, in case of his refusal to perform, will enforce on the ground of fraud. In such a case, it is said, (page 413,) equity acts, not because of a trust declared by the testator, but because of the fraud of the legatee. For him not to carry out the promise by which alone he procured the devise and bequest, is to perpetrate a fraud upon the devisor which equity will not endure. The statute of frauds and of wills are not in the way, for the devise is untouched. The property passes under it, but the law deals with the holder for his fraud, and out of the facts raises a trust *ex maleficio*, instead of resting upon one created by the testator. The fraud which justifies the equitable interference consists in the attempt to take advantage of that which has been done in performance or upon the faith of the agreement, while repudiating its obligation under cover of the statute. The facts should be proved beyond reasonable question. Id. 420. See, also, *Gilpatrick* v. *Glidden*, 81 Me. 137,[1] and cases cited; *Williams* v. *Vreeland*, 32 N. J. Eq. 135, and cases in note; 1 Story, Eq. Jur. § 781; 1 Jarm. Wills, (5th Amer. Ed.) 415, and note 2. In the light of the *O'Hara Case*, the question at the trial was whether the devise was made by Peleg K. Graves to his wife upon his declared wish and expectation that she would at or before her death make an equal division of the property among their children, and upon her promise to him that she would do so. The affirmative of these propositions was with the plaintiff, and upon his part the testimony was given of Mr. Ramsdell, the attorney who drew the will, and who was one of the subscribing witnesses; the other subscribing witness being dead. Testimony was also given of subsequent declarations and acts of Mrs. Graves.

The testimony of the attorney was objected to by the defendants as being within the prohibition of section 835 of the Code of Civil Procedure. As the evidence was received and considered by the court, the objection is not available here to the respondents. We must assume the testimony properly received.

The attorney testified that after the will was written, and before it was signed, there was an interview between Mr. Graves and his wife, in which he said he was very sick; that "he desired to make an equal distribution of

[1] 16 Atl. Rep. 464.

his property among his children; that he was unable to do so then; that he wanted to will it all to her, [speaking to his wife,] and then she was to go on, and divide it up between them as they might afterwards agree; that he was making his will so that she could deed the property, and divide it before her death, to the children; thought she had better keep the home farm. He said he was making his will, giving her power to convey any part of the real estate during her life-time, so that she could make a division by deed, so that it would not have to depend on her will to divide it, excepting the home farm, and asking her if that was satisfactory; and she said it was, and that she would do so.   He then executed the will.   The home farm was to be divided by will.   She was to deed the main part of the property, except the home farm,—divide in that way,—and then the home farm she was to keep, and divide it by her will between the children.   After assénting to this request, the will was executed and witnessed.   It had been previously read over, in the presence of the other subscribing witness and Mrs. Graves, to Mr. Graves."   The witness further stated that the testator said there were advances to his children, the amount of which he did not know, and he did not know the state of his indebtedness, and the amount of his personal property, and there was no way to make an equal division except to make a will of that nature,—divide it all either at the decease of his wife or then, and that he was not willing to do.  Upon cross-examination this witness testified that Mr. Graves' request was that Mrs. Graves should make the division just as soon as the estate could be settled up so she could do it, all except the home farm, and should keep that herself, and divide it by will; that he said he was so sick he wanted to divide the property, but was unable to do it, and that he had made his will so that she could divide it after his death, and he wished her to do it; that he wanted it all divided equally, and asked her to do it that way, and she said she would.   He also testified that upon the occasion of reading the will in the presence of the widow and children, a few days after the death of Mr. Graves, he presumed, he said that the will gave to the widow the property to do with as she liked, and that in March following, upon the occasion of a compromise of a judgment against Silas Graves, one of the heirs, he presumes he said to the holder of the judgment that Mrs. Graves was the absolute owner of all the property, and that Silas would never get anything unless she chose to give it to him.   A witness, Mrs. Bonney, testified that in the summer of 1884, Mrs. Graves said to her that she wanted the children to all share equally in the property, and have it as Peleg wanted it; that he had willed it to her, and the children were to share equally when she was done with it. Mrs. Spink testified that in the summer of 1885, before Mrs. Graves was taken sick, she (Mrs. Graves) said to the witness that she intended her property should be divided just the same as Peleg wanted it; that she had promised Peleg to have hers equally divided among the family, and she intended it should be done; that she had made that promise to Peleg when he made his will.   Collins F. Armsbury, a conveyancer, testified that in March, 1886, Mrs. Graves called on him to transact some business between her and the children, and said that her husband "made a will, and that the matter of dividing the property with the children was left with her; that there was indebtedness against the estate,—indebtedness of different members of the family, —and she wished me to come there and assist them in arriving at the different amounts due each one, and also fixing a price on the real estate.   She wished to convey a part of it to each of the heirs.   She said that she made an arrangement with her husband, or that she agreed that she would make an equal division among her children;" that at the time her husband made his will "he wished to make an equal division of the property with his children, and that she pledged him she would carry it out.   She did not say whether she did this before or after he made his will."   With reference, apparently, to the testimony of this witness, the case shows the following requests by the plaintiff,

with the action of the court thereon: "(a) That in March, 1886, she called upon one C. F. Armsbury to assist her in making a partial division among said children, stating to him her husband was taken sick, made a will, expressed his wish to have made an equal division of the property among the children, and the court so found. (b) And that she had pledged him she would carry it out; which the court refused to find, and to such refusal plaintiff excepted and excepts. (c) And with his assistance in adjusting the debts, etc., in part performance of her said promise and his wish, she executed conveyances by her individual deeds of land to the respective children separately, and during the negotiations therefor all the children being present. Alice Ethridge objected to taking a farm her mother proposed she should, because by so doing she would incur so large a debt for the purchase price over and above her share in that partial division. She did not know as she would be able to pay it. Whereupon, in reply, Jennette Graves said 'it would be but a little while before the rest would be divided, and that would help them out.' Then, relying upon such assurance, the several children took the parcels proposed and agreed on, and Alice giving a mortgage for $3,800 on the land conveyed to her for price over her share. Willie and Silas also gave mortgages; each mortgage running to the mother, individually. The court so found."

This last request and finding assumes that there was a promise from Mrs. Graves to her husband, in part performance of which the division was then being made. Inferentially, it would refer to the expressed wish stated in the first of the quoted findings, and would apply to the balance of the real estate. At the trial it seems to have been understood that there was some agreement between Mrs. Graves and her husband. The following statement appears in the case: "The only question which is submitted in this case is as to the effect of the parol agreement between Peleg Graves and his wife, Jennette, concurrent with the execution of this will, as defining the nature of the estate which Jennette took under the will." The view of the special term was that the evidence effective to accomplish a charge should be of a kind and character absolutely certain and conclusive,—should be of the certainty of a writing. The only witness of the transaction itself, between Mr. and Mrs. Graves, was the attorney, Mr. Ramsdell; and it was considered that his testimony was weakened by the character of his subsequent declarations, above referred to, and that the subsequent declarations of Mrs. Graves on the subject did not sufficiently fortify the main witness, to extent of sustaining the claim of the plaintiff. Assuming, as we must, that a partial division occurred in March, 1885, under the circumstances as found upon the request of plaintiff, hereinbefore referred to, it was an act of the parties strongly corroborative of the theory of the plaintiff. It contemplated a further division in accordance with a promise. That was a year after the death of Mr. Graves, and all the parties then acted on the theory that there was an obligation on the part of Mrs. Graves to divide at some time all the property equally between the children. I am of the opinion that sufficient force was not given by the trial court to this act of the parties. The rule followed by the special term, as to the character of the evidence was stronger than the cases warrant. The necessary facts must, as said in the O'Hara Case, be found beyond reasonable question. The evidence must be clear and satisfactory. It was found in the general findings that Mr. Graves, at the time of his death, was the owner of real estate of the value of from $50,000 to $60,000; and this was considered to be a circumstance against the theory that the testator wished, and the widow promised, that all the real estate except the home farm should be divided by the widow in her life-time. The only evidence to sustain this finding was the testimony of Mr. Ramsdell that the real estate had a reputed value of fifty to sixty thousand dollars. The value, in fact, of that divided, was shown to have been about $20,000, and of the home farm, about $10,000. This is found to be all the real estate; but the case shows another parcel,—a

pasture lot of about 50 acres,—the value of which is not shown.    The argument, therefore, that the widow was not protected in her rights in case of the promise, as claimed, has not much foundation.

The declarations of Mrs. Graves were competent evidence, not only to corroborate Mr. Ramsdell, but to show what the arrangement in fact was.    The testimony as to the declarations is not contradicted.    The witnesses were not interested, and there are no circumstances that seriously impair the testimony, or render it improbable.    *Kavanagh* v. *Wilson,* 70 N. Y. 179.    No evidence was given on the part of the defendants.

As the case stands before us, and giving proper effect to the acts of the parties on the partial division, I am of the opinion that the proofs established, beyond a reasonable question, that the devise in question was made upon the request of Mr. Graves to his wife to divide the same, at or before her death, equally between their children, and her promise to him to do so.    This conclusion would call for a reversal of the judgment.

In explanation of the statement made by the witness Ramsdell at the time of the compromise and settlement of the judgment against Silas Graves, the plaintiff offered to show by the witness that the settlement was upon the voluntary offer of the holder of the judgment, previously made.    This was objected to by the defendants, and excluded, and plaintiffs excepted.    This exception was well taken.    The explanation was competent and material; for, if the statement was only casual, and not by way of inducing a settlement of the judgment, its bearing upon the credibility of the witness would be quite different from what it would be if made to induce a compromise, and at a time when the actual situation was important to be known.    Standing alone, this exception might not be of sufficient importance to call for a reversal; but it should be considered, in view of the other aspects of the case.    The evidence of the witness was very important, and it was claimed that his subsequent statements impaired his credibility.    The circumstances under which the statement was made should have been received.    Judgment reversed upon the exceptions, and new trial ordered; costs of appeal to abide the event.

HARDIN, P. J.    I concur in that part of the opinion of MERWIN, J., which points out the error in refusing the offer by the plaintiff to show by the witness Ramsdell that the settlement of the judgment against Silas Graves was made upon the voluntary offer of the holder of the judgment, previously made; and, by reason of that error, I think a new trial should be granted.    The questions of fact involved in the case are very important, and the evidence of Ramsdell is vital upon the principal and pivotal question.    Because the principal question of fact has been once passed upon by a trial judge, a new trial before a jury, upon issues settled, would perhaps be more satisfactory.    These views lead me to concur in the result, and join MERWIN, J., favoring a reversal of the judgment now before us.    The judgment should be reversed on the exceptions, and a new trial ordered, with costs to abide the event.

MARTIN, J.    I concur in result on ground stated in memorandum of HARDIN, P. J.