## TEUSCHER et al. v. GRAGG.

No. 19337. Opinion Filed April 23, 1929.

John Adams, for plaintiffs in error.

Bierer & Bierer, for defendant in error.

CULLISON, J. This is an action by Walter S. Gragg, plaintiff below, defendant in error, against Estella Teuscher and Frank Teuscher, defendants below, plaintiffs in error, in the district court of Logan county, Okla., wherein plaintiff prays the court, sitting as a court of equity, to decree and establish against the principal defendant, Estella Teuscher, and her husband, Frank Teuscher, a constructive trust in a quarter section of land in Logan county, Okla., to wit: The southwest quarter (S. W. ¼) of section twenty-nine (29), township eighteen (18) north, of range four (4) west of the Indian meridian.

For convenience the parties will be referred to as they appeared in the court below.

The plaintiff, Walter S. Gragg, and defendant Estella Teuscher are brother and sister; son and daughter, respectively, of Loueasa Gragg, who departed this life December 16, 1925, and Samuel T. Gragg, who died March 25, 1924. There are three other children, sisters of plaintiff and defendant, who do not claim any interest in the land in dispute.

Loueasa Gragg, the mother of plaintiff and defendant, at the date of her death was the owner of two quarter sections of land consisting of 320 acres; only one quarter section of land, however, is involved in this suit. The mother left a will by the terms of which she devised the land involved in this action to the defendant Estella Teuscher, then Estella Gragg, and the other quarter section of land to the sisters of plaintiff and defendant.

Plaintiff obtained judgment against the defendant in the trial court. Defendants, plaintiffs in error, pray a reversal of said judgment.

Plaintiff alleges thet his mother, Loueasa Gragg, was the owner of 160 acres of land in Logan county, Okla., during her lifetime, subject to a mortgage and oil lease on said land; that on November 28, 1925, she made a will; that on the day said will was executed, November 28, 1925, and many times prior thereto, it was then and there agreed between the said Loueasa Gragg and this plaintiff and the defendant Estella Teuscher, who was at that time a maiden and single woman, that their mother should make her will and devise said quarter section of land, subject to the incumbrance thereon, to Estella M. Gragg, and that in consideration thereof the said Estella M. Gragg would receive and hold the legal title to said land for the mutual benefit of herself and this plaintiff, share and share alike, and should convey to this plaintiff, upon his request, the undivided one-half interest in and to said land.

Plaintiff alleges that he is now and for a long time past has been in actual, open, notorious, and peaceable possession of an undivided one-half interest in said quarter section of land as his homestead.

Plaintiff alleges that the family relations and family feeling existing between the said Loueasa Gragg and this plaintiff and the defendant Estella M. Gragg were such that Loueasa Gragg and this plaintiff reposed full and explicit confidence, faith, and trust in the defendant.

Plaintiff further says that the said Estella M. Gragg, now Estella Teuscher, duly agreed and assented to the agreement above set forth and agreed to hold the one-half interest in said tract of land as above stated for the use and benefit of this plaintiff.

The plaintiff further alleges that the said Loueasa Gragg died December 16, 1925, and that on the 4th day of March, 1926, this plaintiff, as one of the heirs of the said Loueasa Gragg, promptly presented said will of Loueasa Gragg to the county court of Logan county for probate, and relying upon the arrangement made between the said Loueasa Gragg, ancestor, and the defendant Estella M. Gragg and this plaintiff for the full protection of the interest of this plaintiff in the estate of their mother, the said will was duly admitted to probate.

The plaintiff alleges that he has performed all of the said contract and arrangement on his part and remains in possession of said tract of land as a joint holder thereof, and claims his homestead right in the said land under his ownership of the one-half interest thereof.

Plaintiff further alleges that in violation of the duty of the defendant Estella Teuscher to carry out and perform the said agreement, arrangement, and obligation, she wrongfully and fraudulently refuses to recognize the one-half interest of this plaintiff therein or to convey the same to this plaintiff. Wherefore, this plaintiff is entitled to the aid and intervention of a court of equity to protect his right by impressing the legal title held by the plaintiff with a constructive trust to force her to perform the obligation assumed in the aforesaid agreement and arrangement.

The defendant Estella Teuscher, in her separate answer to plaintiff's petition, says:

This defendant admits that she is a sister of the plaintiff and that their mother, Loueasa Gragg, departed this life, testate, on the 16th day of December, 1925, leaving a last will and testament dated November 28, 1925, which was duly probated in the county court of Logan county, Okla. This defendant also admits that the plaintiff, Walter S. Gragg, was executor named in said will, and that said plaintiff accepted said trust and duly probated said will and said cause was duly closed by formal discharge of said plaintiff as such executor.

This defendant further admits that under the terms and provisions of said last will and the decree of said court which followed the provisions of said will, the southwest quarter of section 29, township 18 north, of range 4 west of the Indian meridian, in Logan county, Okla., was devised to this defendant in fee simple subject to a first mortgage thereon in the sum of $2,500 and a second mortgage thereon in the sum of $250.

This defendant also admits that Exhibit "A" attached to plaintiff's petition is a true and correct copy of the last will and testament of the said Loueasa Gragg.

This defendant specifically denies that there was any trust agreement, or talk, or agreement between this defendant and plaintiff and their mother, Loueasa Gragg, now deceased. But this defendant alleges that the terms and provisions of said last will were the true intent and purpose of the testatrix, Loueasa Gragg, now deceased; that said Loueasa Gragg acquired title to said farm through the estate of the father of this defendant and of the plaintiff, Samuel T. Gragg, who departed this life in the year 1924, March 25th; that during the lifetime of the said Samuel T. Gragg and his wife the said Loueasa Gragg made an advancement to the plaintiff, Walter S. Gragg, by conveying to him 80 acres of land; that said conveyance was made to the said Walter S. Gragg as an advancement to him; that the said testatrix, Loueasa Gragg, at the time of making said will, knowing that her son, Walter S. Gragg, had been advanced by her and her husband said 80 acres of land for the use and benefit of the said Walter S. Gragg, considered that her son, Walter S. Gragg, had received more by the way of advancement than this defendant; that no trust was mentioned by the said Loueasa Gragg, and none was intended.

Defendant further says that she did lease the quarter section of land in dispute to the said Walter S. Gragg for the year beginning August 1, 1926, and ending July 31, 1927, and the said Walter S. Gragg is now and has been since July 1, 1926, a tenant of this defendant on said farm.

Plaintiff in his reply to defendant's answer admits:

That Samuel T. Gragg, during his lifetime, and his wife, said Loueasa Gragg, made, executed, and delivered a conveyance to the plaintiff, Walter S. Gragg, of 80 acres of land in the southeast corner of the northeast quarter of section 30, township 18 north, of range 4 west of the Indian meridian, Logan county. Plaintiff, however, expressly denies that the said conveyance was executed or considered or intended as an advancement to this plaintiff, and plaintiff alleges that the said conveyance was not so regarded and was never regarded as an advancement by Samuel T. Gragg, Loueasa Gragg, or this plaintiff. Plaintiff further alleges that he paid the said Samuel T. Gragg, his father, valuable consideration for the said deed to the said 80 acres of land. Plaintiff expressly denies that the said $2,000, or any other money, property, or thing acquired by this plaintiff in any manner from the said Loueasa Gragg during her lifetime, or the said Samuel T. Gragg during his lifetime, or from both or either of them, was ever intended, considered, or desired by this plaintiff's father and mother, or either of them, in any way to operate as an advancement to this plaintiff, or in any way to diminish his share in the estate of the said Samuel T. Gragg, or of the said Loueasa Gragg, or of either of them, except that the plaintiff's one-half interest in the land involved in this suit, as aforesaid, was to be charged with his $2,000 loan as hereinabove and in plaintiff's petition set forth.

The defendants, plaintiffs in error, allege the following errors, 1 to 6, inclusive:

"(1) That the decision of the court is not sustained by sufficient evidence.

"(2) That the decision of the court is contrary to law.

"(3) Errors occurring at the trial and excepted to by these defendants at the time.

"(4) Because the court admitted incompetent evidence offered on the part of the plaintiff over the objections of these defendants, to which these defendants at the time duly excepted.

"(5) That the court erred in excluding competent and material evidence offered on the part of these defendants, to the exclu-

sion of which these defendants at the time duly excepted.

"(6) Because the court should have denied the plaintiff any relief, on the grounds that the evidence showed that the plaintiff, Walter S. Gragg, sought relief in a court of equity with unclean hands."

Defendants elect to discuss errors 1, 2, and 6 only, remarking that errors 3, 4, and 5 are embraced in errors 1, 2, and 6.

Defendants in discussing their second assignment of error say:

"This proposition involves the question of the statute of frauds and the statute of wills."

Defendants cite sections 8457, 8465, and 8466, Comp. Okla. Stats. 1921, which relate solely to express trusts. In view of the fact that plaintiff in no manner claims to hold the land in controversy by the terms of an express trust, we deem it unnecessary to discuss the above sections of the statute, or much of the law cited, as it appears to us immaterial.

The plaintiff, defendant in error, seeks, and was decreed by the trial court, to have established a constructive trust in and to the land involved.

Section 8462, Comp. Okla. Stats. 1921, the third subdivision of said section, relates to trusts by "operation of law," which include constructive and resulting trusts.

The great weight of authority, in this state and many other states, excepts trusts arising by "operation of law" and holds that constructive trusts are not within the statute of frauds.

Defendants also cite section 11231, C. O. S. 1921, which provides that wills must be in writing. Since wills and express trusts both come under the statute of frauds, we will not discuss that subject, it being immaterial in this case.

Defendants also suggest that "mere verbal promises" are not sufficient to create a trust. We are entirely in accord with that rule of law when applied to express trusts, or when the litigant bases his right of recovery solely on a "mere verbal promise."

The trial court, rendering judgment, said:

(1) "The court finds generally upon the issues made in said cause in favor of the plaintiff and against the defendants."

(2) "The court finds that the defendant, Estella Teuscher, holds the legal title to the real property involved in this cause, to wit: The southwest quarter (S. W. ¼) of section 29, township 18 north, range 4 west of the Indian meridian, Logan county, Okla., subject to the incumbrances and leasehold interest hereinafter set forth, but that the plaintiff is entitled in equity to a decree of this court declaring that said defendant holds an undivided one-half interest in said real property in constructive trust in favor of and for the benefit of the plaintiff, subject to the liens and charges thereinafter stated. The plaintiff is entitled to have his undivided one-half interest in said property perfected by conveyance to him from said defendant Estella Teuscher, joined in by the defendant Frank Teuscher."

It will be observed that the trial court in its judgment decreed and declared "that said defendant holds an undivided one-half interest in said real property in constructive trust, in favor of and for the benefit of the plaintiff."

The court having held that the defendant Estella Teuscher, who holds the legal title to the land involved herein, was in fact, and in equity, holding an undivided one-half interest in said land in constructive trust for the plaintiff, it becomes the duty of this court to determine whether or not, under the facts and circumstances in this case, a constructive trust was established.

In discussing this question we suggest four questions in the form of interrogatories:

(1) What is a constructive trust?

(2) When can a constructive trust be established?

(3) Are the facts and circumstances in this case sufficient to establish a constructive trust?

(4) Can a constructive trust be established by parol evidence?

We will discuss these questions in their numerical order.

First. What is a constructive trust?

"A trust has been defined as an obligation upon a person arising out of a confidence reposed in him to apply property faithfully and according to such confidence." 39 Cyc. 17.

"Trusts are divided primarily into two classes, express and implied. Implied trusts are those which, without being expressed, are deducible from the nature of the transaction as matters of intent, or which are superinduced upon the transaction by operation of law as matters of equity." 39 Cyc. 25.

"Implied trusts are subdivided into two classes, resulting and constructive." 39 Cyc. 26.

A constructive trust is:

"A trust not created by any words either expressly or impliedly evincing a direct intention to create a trust, but by the construction of equity in order to satisfy the demands of justice." 39 Cyc. 27, note.

In Rollow v. Taylor et al., 104 Okla. 275 231 Pac. 224, the court said:

"Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by him who holds it."

See, also, 26 R. C. L. 78, "Trusts."

Second. When can a constructive trust be established?

A constructive trust can be established by the promise of heir, devisee, or legatee to hold for benefit of another.

"It is well settled by the great weight of authority that, notwithstanding the statute of frauds, a trust arises where, on the making of a will or thereafter, a devisee or legatee promises the testator, either expressly or impliedly by not dissenting, that he will hold for or give to another the property devised or bequeathed to him, whereby the testator is prevented from making the disposition by will which he intends or is persuaded not to alter a will already made." 26 R. C. L. 1241, citing some 25 cases from leading jurisdictions.

"It is a well settled general rule that if one person obtains the legal title to property, not only by fraud, or by violation of confidence of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner." 26 R. C. L. 1236. Numerous authorities cited thereunder.

Breach of Oral Agreement to Hold in Trust or Reconvey Land Voluntarily Conveyed:

"The statute of frauds, which was intended to prevent frauds, turns against him as the perpetrator of a fraud. It is not, therefore, the fact that the bargain by which he obtained the title is verbal that governs the case, but the fact that he procured the title to be made to him in confidence, the breach of which is fraudulent and in bad faith. The ground of equitable relief and immunity from the statute is the fraud perpetrated, not the agreement to hold in trust. Such a trust does not affect the deed, but acts upon the gift as it reaches the possession of the grantee, and the foundation for the trust is that equity will then interfere and raise a trust in favor of the persons intended to be benefited in order to prevent a fraud." 26 R. C. L. 1238.

Third. Are the facts and circumstances in this case sufficient to establish a constructive trust?

Defendants raise this question in their first assignment of error, viz., "that the decision of the court is not sustained by the evidence."

The controlling question in this case is a question of fact, viz., Did the defendant, Estella Teuscher, at the time and before the execution of the will by her mother, Mrs. Loueasa Gragg, promise and agree that if it was the wish and desire of the mother to will the land to the defendant, to be held in trust by the defendant for her brother, the plaintiff herein, she, the defendant, would accept said devise and hold the undivided one-half interest in the same in trust for her brother, the plaintiff herein, and that she would convey to him his one-half interest in said land at any time plaintiff requested the same?

After a thorough examination of the record in this case we must answer this question affirmatively.

To establish a constructive trust this court follows the well-established rule that:

"A constructive trust in equity may be established by parol evidence; that the proof should be of the most satisfactory and trustworthy kind; that the evidence should be clear, unequivocal, and convincing." Hayden v. Dannenberg, 42 Okla. 776, 143 Pac. 859; Barnes v. Morris, 105 Okla. 17, 231 Pac. 466; Boles v. Akers, 116 Okla. 266, 244 Pac. 182.

A careful and thorough examination of the record in the instant case discloses that the evidence of plaintiff meets the foregoing requirements. The evidence is clear, unequivocal, and convincing.

Fourts. Defendants' error No. 2: "That the decision of the court is contrary to law."

The defendants, discussing error number 2, contend and argue that a constructive trust cannot be established by parol evidence.

26 Ruling Case Law, sec. 79, p. 1233, and many authorities cited thereunder, states what we believe to be the well-established rule in this class of cases:

"Effect of Statute of Frauds and Statute of Trusts and Uses: While the statute of

frauds requires a writing to create an express trust in real property, it has no application to cases where the law raises a constructive trust by reason of the fraudulent acts and purposes in procuring title to the land. The rule in equity always has been that the statute is not allowed to operate as a protection for a fraud, or as a means of seducing the unwary into a false confidence, whereby their intentions are thwarted or their interests are betrayed, and parol trusts in real estate have been frequently established in direct contradiction of the statute, on the ground of fraud. * * *"

Again. the same authority, 26 Ruling Case Law, at page 1251:

"Evidence to Establish Trust: The rule is well settled that parol evidence is admissible to raise a trust in cases of actual or constructive fraud. A trust in an absolute legacy may be established by parol evidence, and the contemporaneous declarations of the testator and subsequent declarations of the legatee, that the bequest was made for the benefit of a third person upon the promise of the legatee to hold it in trust, are admissible for that purpose."

The Oklahoma Supreme Court has many times upheld this rule: See Hayden v. Daunerberg, 42 Okla. 776, 148 Pac. 859. Also, Boles v. Akers, 116 Okla. 266, 244 Pac. 182.

In Logan v. Brown, 20 Okla. 334, 95 Pac. 441, Justice Dunn, rendering the opinion in that case, said:

"Under this last provision the courts have exercised very broad discretion in excepting and taking out of the operation of the statute many cases where accident, fraud, or mistake have intervened, and where it would be inequitable to allow the grantee to retain real property, title to which had been procured under a verbal promise."

In Barren v. Stuart, 136 Ark. 431, 207 S. W. 22, the learned justice in rendering the opinion in that case said:

"Indeed it is not easy to see how such a trust ever could be made out, except by parol evidence, and if this is not competent, a statute made to prevent frauds would become a most potent instrument whereby to give them success. That this doctrine is applied to cases arising under wills, where a person procures a devise to be made in his favor on the distinct declaration or promise that he will hold the land in trust, either in whole or in part, for another, may be seen in the cases referred to in 1 Jarman, 356, and 1 Story's Equity, sec. 256. It is not affected by the statutory provisions on the subject of wills. The proof offered is not of any alteration, revocation, or cancellation, which must be evidenced in a particular manner. It gives full effect to the will, and

every word of it, and to the conclusiveness of the probate, where it is conclusive. It fastens upon the conscience of the party, having thus procured a will, and then fraudulently refusing or neglecting to fulfill the promise on the faith of which it was executed, a trust or confidence, which a court of equity will enforce by compelling a conveyance when the proper time for it has arrived. * * *"

We regard the issues in this case of so great importance, not alone to this plaintiff and defendant, but to all those in this new state who may become similarly conditioned as they, that we cannot restrain ourselves from citing one more case which we regard as the most learned adjudication of the essential elements in the instant case:

Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305, wherein the court said:

"The trust springs from the intention of the testator and the promise of the legatee. The same rule applies to heirs and next of kin who induce their ancestor or relative not to make a will by promising, in case his property falls to them through intestacy, to dispose of it, or of a part of it, in the manner indicated by him. Williams v. Fitch, 18 N. Y. 546; Grant v. Bradstreet, 87 Me. 583 (33 Atl. 165); Gilpatrick v. Glidden, 81 Me. 137 (16 Atl. 464), 2 L. R. A. 662 (10 Am. St. Rep. 245). The rule is founded on the principle that the legacy would not have been given, or intestacy allowed to ensue, unless the promise had been made; and hence the person promising is bound in equity, to keep it, as to violate it would be fraud. While a promise is essential, it need not be expressly made, for active co-operation or silent acquiescence may have the same effect as an express promise. If a legatee knows what the testator expects of him, and, having an opportunity to speak, says nothing, it may be equivalent to a promise, provided the testator acts upon it.

"Whenever it appears that the testator was prevented from action by the action or silence of a legatee, who knew the facts in time to act or speak. he will not be permitted to apply the legacy to his own use when that, would defeat the expectations of the testator. As was said by this court in the O'Hara Case, 95 N. Y. 403, 47 Am. Rep. 53: 'It matters little that McCue did not make in words a formal and express promise. Everything that he said and everything that he did was full of that interpretation. When the testatrix was told that the legal effect of the will was such that the legatees could divert the fund to their own use, which was a statement of their power, she was told also that she would only have their honor and conscience on which to rely, and answered that she could trust them, which was an as-

sertion of their duty. Where in such case the legatee, even by silent acquiescence, encourages the testatrix to make a bequest to him, to be by him applied for the benefit of others, it has all the force and effect of an express promise.'

"The trust does not act directly upon the will by modifying the gift, for the law requires wills to be wholly in writing, but it acts upon the gift itself, as it reaches the possession of the legatee, or as soon as he is entitled to receive it. The theory is that the will has full effect, by passing an absolute legacy to the legatee, and that then equity, in order to defeat fraud, raises a trust in favor of those intended to be benefited by the testator, and compels the legatee, as a trustee ex maleficio, to turn over the gift to them. The law, not the will, fastens the trust upon the fund, by requiring the legatee to act in accordance with the instructions of the testator and his own promise. Neither the statute of frauds nor the statute of the wills applies, because the will takes effect as written and proved; but, to promote justice and prevent wrong, the courts compel the legatee to dispose of his gift in accordance with equity and good conscience."

This is an action based upon fraud, the purpose of which was to declare a constructive trust. Fraud was proved to the satisfaction of the trial court, the evidence satisfies us, and we concur in the conclusion reached by the court below.

"Sixth Assignment of Error." Plaintiffs in error, defendants below, in their sixth assignment of error say:

"Because the court should have denied plaintiff any relief, on the grounds that the evidence showed that plaintiff, Walter S. Gragg, sought relief in a court of equity with unclean hands."

Counsel for defendants in his brief contends that the evidence shows that the plaintiff comes into a court of equity with unclean hands. Counsel also says, on page 112 of his brief:

"In other words, according to his own theory (meaning the plaintiff), he procured this trust agreement to defraud the third party, the Guthrie Cotton & Oil Company."

In view of the very strong statements of defendants' attorney, above mentioned, we deem it important to analyze the testimony in the case relating to the accusation "that the plaintiff comes into a court of equity with unclean hands."

The evidence in this case shows that at the time the will was executed, and many times prior thereto, the mother, this plaintiff and defendant, and their sisters discussed the provisions of the will, or what the will should contain, and the manner of the disposition of the mother's property; and the evidence shows clearly that it was the intention of the mother, Mrs. Loueasa Gragg, that she wanted the old homestead to remain in the Gragg name; that she wanted to preserve one-half interest in the home farm for this plaintiff, and in the language of the witness, "She didn't want anybody to get any part of it or tear it up"; so in order to avoid or prevent any of her property being used to pay the indebtedness of this plaintiff and with that mother pride in her heart to save the home place for her only son, she bequeathed the home place, consisting of 160 acres of land, to the defendant with a complete understanding and under a solemn agreement by and between the mother and this plaintiff and defendant that the defendant was holding one-half of the land in trust for the plaintiff, and that she, the defendant, would reconvey one-half of the interest in said land to the plaintiff upon his request for the same.

The evidence further shows that the plaintiff made no effort or suggestion to his mother with reference to the disposition of her property He does say that he had many conversations with his mother and sisters and that the willing of his interest in the home place, to be held in trust by the defendant, was satisfactory to him.

The evidence in this case clearly shows that the conduct of the plaintiff in adjusting the excessive amount claimed to be due the Guthrie Cotton Oil Company from this plaintiff has no connection with, and is unrelated to, the transaction between plaintiff and defendant and does not relate in any respect to the judicial protection sought.

The above undisputed and unimpeached testimony clearly establishes that counsel for defendant inaptly sought to apply the equitable maxim that:

"He who seeks equity must come with clean hands."

To show applicability and to show inequity on the part of the plaintiff it must appear to have been in connection with the particular act or acts of this plaintiff and defendant, in the instant case.

In applying the teaching and underlying principles in this maxim, the courts and text-writers have universally held:

"* * * It is necessarily assumed that different equitable rights have arisen from the same subject-matter or transaction, some in

favor of the plaintiff and some of the defendant; and the maxim requires that the courts should, as the price or condition of its enforcing the plaintiff's equity and conferring a remedy upon him, compel him to recognize, admit, and provide for the corresponding equity of the defendant, and award him also the proper relief. The maxim does not assume that the plaintiff has done anything unconscientious or inequitable; much less does it refuse to him all relief; on the contrary, it grants to him the remedy to which he is entitled." 1 Pomeroy, Equity Jurisprudence (4, Ed.) 738.

"Its Limitations. Broad as the principle is in its operation, it must still be taken with reasonable limitations; it does not apply to every unconscientious act or inequitable conduct on the part of a plaintiff. The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern. When a court of equity is appealed to for relief it will not go outside of the subject-matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in no-way affecting the equitable right which he asserts against the defendant, or the relief which he demands." 1 Pomeroy, Eq. Jur. (4th Ed.) 741.

The plain teaching of this maxim is summed up by Justice Pomeroy in his work, Equity Jurisprudence, vol. 1 (4th Ed.) sec. 400:

"The doctrine, thus applied, means that the party asking the aid of the court must stand in conscientious relations toward his adversary; that the transaction from which his claim arises must be fair and just, and that the relief itself must not be harsh and oppressive on the defendant."

The defendant in this case cannot avail herself of the principle of this maxim unless it clearly appears that she herself has been deprived of some of her just and equitable rights in the subject-matter of this action:

"For it is assumed that the contract (will or instrument involved) is not illegal; that no defense could be set up against it at law; and even that it possesses no features or incidents which could authorize a court of equity to set it aside and cancel it." 1 Pomeroy (4th Ed.) 745.

In the case of Anisfield Co. v. Grossman, 98 Ill. App. 180, at page 186, the court says:

"The maxim of equity that he who seeks equity must come with clean hands only applied to the particular transaction under consideration by the court."

"The wrong must have been done to the defendant himself, and must have been in regard to the matter in litigation."

The limitation on this equitable maxim set forth by the above authorities has been recognized and promulgated by this court. In Canfield v. Jack, 78 Okla. 127, 188 Pac. 1040, this court held:

"The maxim that one who comes into equity must come with clean hands is based on conscience and good faith. The maxim is confined to misconduct in regard to, or at all events in connection with, the matter in litigation, so that it in some way affects the equitable relations subsisting between the two parties and arising out of the same transaction. 'Clean hands means a clean record with respect to the transaction with defendant, and not with respect to any third person."

The syllabus in the case of Siegel v. Quigley (Mo.) 24 S. W. 742, reads as follows:

"Partnership — Fraud. The father of a debtor, being desirous to help him, but unwilling to pay his debts, sold to the son's wife, for a nominal amount, $15,000 worth of machinery, and the three entered into a partnership; the wife putting in the machinery and the father the rest of the capital. Held, that a suit to have the property declared that of the son, on the ground that it was a fraudulent device to enable him to carry on a business of his own and avoid payments of his debts, could not be maintained."

The court in rendering judgment in the above case, among other things, said:

"This is a suit in equity by a large number of persons, who are the judgment creditors of the defendant John B. Quigley, the debts having accrued in 1882, at which time said defendant became, and ever since has been, insolvent. * * * It is then alleged that the defendant John B. Quigley, to prevent the collection of the above-mentioned debts, entered into a nominal copartnership with his wife, Ava A., and his father, William B. Quigley; that Ava A. put no money into the firm and that William B. put very little money into it, all of which has been paid back to him by John; that the firm was nominally published to the world to enable John to carry on business and at the same time avoid the payment of the debts due to plaintiffs.

"* * * We think the plaintiffs have failed to make out by their proof any such case as that stated in their petition. It is true, William B. Quigley testified to the following effect: 'The bill of sale to Ava A. Quigley was more of a gift, except as to the $3,500, to enable her to make a living, for they had nothing and were broken up. John was my son, and I wanted to put things in her hands, so they could make something. I went into the firm just because they had nothing, and I interested myself to get them started. I was not willing to pay John's debts.' * * * The proof is clear that she put this property into the firm in 1884, and at the same time William B. Quigley put into the firm $7,500 in cash. In 1886 William B. Quigley made a mortgage on his farm, and thereby raised $20,000; $13,000 of which went into the firm. * * * The firm was created for an honest purpose, and transacted business on the property and money furnished by Ava A. and William B. Quigley. * * * The foregoing is sufficient to show the infirmity of plaintiffs' case."

It is well settled that "every person competent to make a will, or enter into a contract has the power to dispose of his property by creating a trust * * *" (39 Cyc. 35); and that a trust may exist in any property in esse which in the eye of a court of equity is of value:

"There appears to be no limitation or restriction on the kind or nature of property which may be the subject of a trust, it being the rule that a trust may exist in any property, real or personal, legal or equitable, which is in existence and which in the eye of a court of equity is of value." 39 Cyc. 36.

It is also established law that a testator or testatrix, by will, may make any disposition of his or her property not inconsistent with the laws or contrary to the policy of the state:

"Except as to a purpose foreign to the public policy of the state, * * * the policy of the law to permit a man to make whatever disposition of his property he sees fit, allows him to create an active express trust for any purpose he deems wise and expedient. * * *" 39 Cyc. 37.

Among those trusts sanctioned by the law, are those created for the purpose of protecting the trust property from the control of the beneficiary's creditors:

"* * * At common law, and by statute in some states, trusts may, be created for the purpose of paying the settlor's debts; or selling real property for the benefit of creditors, or legatees * * * of preserving a future estate, of protecting the trust property from the control of the beneficiary's husband, or his creditors." 39 Cyc. 38, 39.

The court in the case of Butler v. Butler, 9 Phila. (Pa.) 269, held:

A trust created to give effect to a testator's intention that a devisee should not control the principal of the estate until he arrived at the age of 28, is an active and lawful one.

Counsel for defendants, plaintiffs in error, in his brief, page 112, seeks to make it appear that plaintiff brought about the trust agreement for the sole purpose of defrauding his creditors, and for that reason "came into a court of equity with unclean hands."

It is clear that the defendant made no effort to show that the business affairs of the plaintiff with the Guthrie Cotton & Oil Company affects, in the least degree, the equitable relations of plaintiff and defendant. We are of the opinion that the testimony regarding this phase of the case does not prove the contention of the attorney claimed in his brief, and under all the authorities is, and was, clearly incompetent, irrelevant, and immaterial. It is also very clear that the trial judge considered the testimony incompetent, irrelevant, and immaterial, as he made no reference or comment to the same in his judgment rendered.

It is a well-settled principle of law that:

"Probate court has no power to appropriate share of heir or devisee to the payment of his debts. In re Nerac, 35 Cal. 392, 95 Am. Dec. 111.

Nonjudgment creditor of beneficiary under a will, who is seeking judgment against beneficiary in separate suit, is not entitled to obtain judicial construction of will in order to secure adjudication that beneficiary took interest under will to which lien of judgment would attach. Jackson v. Callahan (Ga.) 109 S. E. 499; Adger v. Kirk (S. C.) 108 S. E. 97.

Courts of equity have no power to compel an executor to pay a legacy to the legatee's judgment creditor in satisfaction of a judgment. Donoven v. Finn, 1 Hopk. ch. 59 (N. Y.) 14 Am. Dec. 531.

The court in rendering judgment in the case of Jackson v. Callahan (Ga.) 109 S. E. 499, said:

"The plaintiff is neither a judgment creditor of the beneficiary nor does he assert any lien on or title to any estate devised to the beneficiary. He asserts no equitable claim or right to the estate devised to his debtor, nor does he seek any equitable remedy. The sole object of the action is to obtain a judicial construction of the will, in order to secure an adjudication to the effect that plaintiff's debtor took under the will an interest to which the lien of his

judgment, if and when obtained, would attach. Only the personal representative of an estate may maintain an action having for its sole object the judicial construction of a will."

Defendants' attorney also claims, in his brief only, that plaintiff exercised undue influence over the mother at the time the will was executed:

"Undue influence, such as will invalidate a will, must be something which destroys the free agency of the testator at the time. when the instrument is made, and which, in effect, substitutes the will of another for that of the testator. * * *" Kindt v. Parmenter, 83 Okla. 117, 200 Pac. 706.

We deem it unnecessary to refer further to error number 6. The numerous cases and authorities which we have examined and those cited in the briefs show that in the application of the maxim urged by counsel for defendant the courts have consistently granted or refused relief by first determining whether the conduct of the plaintiff is related to the subject-matter of the suit.

We, therefore, conclude that this maxim of equity contended for by counsel for defendant has no application to this case.

Having already held that the defendant holds an undivided one-half interest in the land which is the subject-matter of this suit, in constructive trust for the plaintiff, the judgment of the trial court is, therefore, affirmed.

LESTER, V. C. J., and HEFNER, SWINDALL, and ANDREWS, JJ., concur. HUNT, J., concurs in conclusion.

MASON, C. J., and RILEY and CLARK, JJ., absent and not participating.