Thomas J. MORRIS, Plaintiff in Error,

v.

Kathryne Morris LEVERETT, Gertrude Morris Hudspeth, Daisy Morris Moore, now Duvall, and Ruth Morris Zelief, Defendants in Error.

No. 41561.

Supreme Court of Oklahoma.

July 18, 1967.

As Amended Nov. 20, 1967.

Rehearing Denied Nov. 21, 1967.

Second Rehearing Denied Dec. 19, 1967.

Jerome Sullivan, Duncan, J. P. Speer, Comanche, Curtis & Blanton, Pauls Valley, for plaintiff in error.

T. H. Ottesen, Millard F. Lowrance, Sulphur, Haskell Paul, Pauls Valley, for defendants·in error.

BERRY, Justice.

Defendants in error, hereafter referred to as plaintiffs or by name, sued plaintiff in error as defendant in the trial court to establish a constructive trust in the estate of J. W. Morris, deceased, by parol evidence. The trial court rendered judgment establishing a trust for plaintiffs' use and benefit and defendant has appealed.

Actual trial of the case and disposition of the motion for new trial consumed five days time. The evidence relative to every phase of the case is severely conflicting. Much of the argument offered in support of the issues on appeal rests upon the interpretation placed upon particular portions of the evidence by the party concerned with the issue involved. The magnitude of the record precludes a satisfactory narrative summation of the evidentiary matters which provided the basis for the trial court's findings of fact and conclusions of law rendered in support of the judgment. This is an equity case, wherein it is incumbent upon the court to examine the record and weigh the evidence. Blanchard v. Gordon, Okl., 418 P.2d 678.

Because this record has been examined at length and the evidence weighed, no statement of the evidence is made, other than for mention of matters having specific bearing upon a particular argument or issue. The essential facts which precipitated the controversy arose from circumstances affecting the family relationship of J. W. Morris, deceased, and his paternal half-sisters and half-brothers.

Deceased, resident of Murray County, died testate on January 11, 1958, unmarried and without issue, while visiting defendant in Comanche, Oklahoma, possessed of an estate approximating $250,000.00 in value. The corpus consisted of cash, building and loan stock, secured loans, U. S. Bonds, numerous mineral interests and real property in Grady and Garvin Counties owned in fee. Approximately $2,500.00 income accrued monthly from oil producing properties. Various oil companies named parties defendant were treated as stakeholders by agreement and need not be mentioned further.

Testator's will, dated January 12, 1937, devised a described farm to a nephew, defendant's son, bequeathed $1.00 to each of the half-sisters and half-brothers, and to "my friend" Rex Muncrief. The remainder of testator's estate was left to defendant. On January 9, 1939, testator executed a codicil to the will reaffirming the earlier provisions, but explicitly declaring that his step-mother should receive nothing from his estate. The codicil also provided the beneficiaries under the will should lose their standing in the event the step-mother was allowed to take possession of any of testator's property, or if any heirs either loaned or borrowed among themselves, or if any heir contested the will. In the event of any breach of such conditions that heir's bequest was to pass to the Salvation Army. The record shows testator had conceived a dislike for the step-mother and his paternal half-kin because of differences which had arisen among the parties during administration of their father's estate in 1934.

Defendant tendered this will to the County Court of Murray County for probate. Hearing was set for February 11, 1958, at which time three of the plaintiffs appeared, as did Rex Muncrief. The hearing on the will was continued, but plaintiffs at that time advised defendant they had reason to believe a later will existed. Defendant advised plaintiffs he was in great fear of Muncrief, and if a contest ensued the estate might go to the Salvation Army. For these reasons defendant agreed that if plaintiffs would stand by him the estate would be divided in equal shares after probate was completed. Plaintiffs requested such agreement be put into writing, but defendant declined to do so and asked that they trust and stand by him, which they agreed to do. The will and codicil were admitted to probate without contest and a final decree and order of distribution was entered July 16, 1959, setting over the entire estate to defendant in accordance with the will. The final account, as approved, reflected disposition of the bulk of the personal estate as costs of administration. These matters relate facts found by the trial court concerning admission of the will to probate, and disclose the circumstances upon which plaintiffs' action to establish a constructive trust, and for other relief, was based.

The action was commenced by four plaintiffs, but judgment was rendered in favor of all half-kin, or their heirs, and no distinction of the plaintiffs is necessary. The petition filed February 23, 1961, alleged their appearance at the hearing for admission of the will to probate and protest of probate for the reason same was not testator's last will and did not reflect the intended distribution of his property; existence of a later will devising the estate in equal shares, and plaintiffs' agreement not to contest the will in consideration of defendant's promise to accept distribution of the estate in trust in equal shares for all the heirs in accordance with the law of succession; that plaintiffs relied upon this agreement and did not contest the probate

and distribution to defendant, who thereafter refused to honor his agreement. Personal service was had upon defendant in Stephens County.

Defendant appeared specially denying jurisdiction of the trial court, and has preserved this jurisdictional question at all stages of these proceedings. Demurrer to the petition upon grounds of no cause of action, bar of the statute of limitations and that plaintiffs sought to establish an express trust by parol evidence was sustained.

Plaintiffs further amended their petition to allege defendant's agreement, by letter written to a nephew and wife, to take and hold the estate in trust and to share with plaintiffs as though there had been no will. This letter, written in January, 1958, was to the effect that the testator had died with a wounded heart, but not toward his nieces and nephews; unless a later will could be found, the estate had been left to defendant "* * * as a trust, I know, to protect and bless his loved ones and that includes *all* his nieces and nephews as well as Mae and me. * * * Unless it all goes up in the holocaust of legal battles * * * I will be able while I am living to stand by all of you young kinsmen. * * *" On presentation of defendant's demurrer plaintiffs conceded such letter did not satisfy the statute of frauds, and were granted leave to file a further petition.

On October 17, 1962, plaintiffs filed an amended petition, wherein plaintiffs alleged beneficial ownership of an undivided ⅔rds of all testator's properties, to which defendant held legal title while wrongfully and wilfully refusing to recognize plaintiffs' rights. Plaintiffs asserted a constructive trust upon grounds that: (a) defendant became holder of legal title by offering the purported last will for probate; (b) defendant orally agreed if plaintiffs allowed this will to be probated without contest and the estate distributed the defendant thereafter would divide the estate equally with plaintiffs; (c) prior to hearing the petition for probate plaintiffs had evidence this was not testator's last will, and did not control

disposition of the estate because nullified and abandoned by testator; (d) prior to the probate hearing Muncrief asserted his right as sole successor to the estate and both defendant and his wife represented that their lives were in danger at Muncrief's hands, and that plaintiffs' loyalty to defendant would afford protection; (e) subsequent to the agreement, but before hearing of the petition for probate, plaintiffs learned the will offered by defendant was not the instrument they believed to be the last will, but an instrument which removed them as devisees; (f) at the hearing plaintiffs advised defendant they knew the will offered for probate was not the last will; and defendant aware of Muncrief's presence, expressed fear for his own and his wife's life and besought plaintiffs to stay with him to save the estate for the Morris family and protect their lives, in return for which defendant would share equally with plaintiffs; plaintiffs' request for a written acknowledgment was refused on grounds this would result in the estate passing either to the Salvation Army or Muncrief, as well as endangering the lives of defendant and his wife; (g) plaintiffs believed such matters and did not insist upon a written agreement or object to probate of the will as would have been done except for defendant's representations; (h) because of these matters plaintiffs permitted probate to be made pursuant to the agreement and continued belief in defendant's expressed fears, allowed estate to be distributed without protest; (i) plaintiffs fully performed their agreement with defendant, by reason of which plaintiffs were entitled to undivided interest in property, although defendant and his son, who received a farm under the will, wrongfully refused to recognize plaintiffs' rights.

Upon presentation of defendant's demurrer to this amended petition plaintiffs conceded that correspondence from defendant to various kinsmen was too indefinite to take the case out of the statute of frauds. However, plaintiffs urged that in view of statements concerning defendant and his

wife being in jeopardy, and plaintiffs' agreement to forego their demand for a written agreement and abandonment of plans to contest the will, a cause of action for establishment of a constructive trust resulting from duress had been plead. The demurrer was overruled and the issues tried were formed by filing of defendant's general denial. On the trial date defendant was granted leave to amend the answer to allege that plaintiffs' cause of action based on duress as set forth in the amended petition filed October 17, 1962, was barred by limitations under 12 O.S.1961, § 95(3).

After the extended trial the court made written findings of fact, upon which were based the conclusions of law supporting the judgment rendered for plaintiffs. Because these findings sufficiently summarize the evidence upon which the court rendered this judgment the substance of these findings is set forth.

The court found the facts of residence, death and relationship to the parties as above related. During testator's lifetime detailed instructions for funeral arrangements had been given an old friend (Hughes). On April 22, 1934, testator wrote a letter to defendant advising that he had placed written burial instructions in his mother's old trunk. This trunk had been moved about from place to place, and the contents had been bothered long prior to his death. Immediately following his demise the defendant, accompanied by his wife, went to the Lindsay bank in a quest for burial instructions. At defendant's request the bank president produced a locked box testator had left in the vault. Defendant produced a key which opened the box, and the parties examined the contents but found no burial instructions, although finding an envelope marked "to be opened after death." The banker opened the envelope in defendant's presence and found it contained the last will and codicil of testator, which both men read and placed back in the locked box, which was retained in the bank vault.

Upon learning of testator's demise one plaintiff (Kathryne Leverett) accompanied.

by her daughter, went to defendant's home, arriving in defendant's absence. Later that night defendant and his wife returned and brought into the house a suitcase, which had been obtained from the rooming house in Sulphur, Oklahoma, where testator had lived for several years prior to death. Prior to taking up residence in Sulphur testator lived on his farm near Lindsay and was a close friend of one Hughes, who purchased deceased's farm in 1947. On the date of purchase testator and Hughes went to a lawyer's office in Lindsay to complete the deeds. While on that business testator engaged in a discussion concerning changes which he desired to make in his will, whereupon Hughes left the private office. The lawyer prepared an instrument which testator signed and, accompanied by Hughes, took to the Lindsay bank and placed in a box in the bank vault. All the half-kin, including defendant, had knowledge of and discussed the possibility that deceased had prepared a later will or codicil prior to and during the probate proceedings, but no other instrument ever was offered for probate in Murray County or elsewhere.

Defendant caused the will which testator had left for safekeeping in the Lindsay bank to be filed for probate in the County Court of Murray County. Prior to this will being filed for probate the county judge (Marie Dunn) received a telephone call from a Lindsay lawyer (Murray) who advised that he had a will belonging to J. W. Morris, deceased. This lawyer stated the will would be brought to Sulphur for probate, but never arrived there with this will. Defendant's petition for probate was set for hearing February 11, 1958, and three of plaintiffs (Leverett, Duvall and Chas. E. Morris) were present at the time for hearing. Muncrief also was present and represented by counsel, and requested a continuance and hearing was re-set for February 24, 1958. When present for the first hearing plaintiffs talked with defendant concerning the will offered for probate, and declared they had reason to believe testator had made a later will. Defendant advised plaintiffs he was in fear of Muncrief and any attempt to contest the will would result in the estate going to the Salvation Army; if plaintiffs would stand by him then upon completion of probate the estate would be divided in equal shares. Plaintiffs' request for a written agreement was refused upon grounds the estate might go to the Salvation Army or to Muncrief. Defendant advised plaintiffs they would have to trust him, and they assured him of their loyalty. Plaintiffs made no contest, the will was admitted to probate, and the estate was distributed to defendant in accordance with the terms of the last will. During the course of administration Chas. E. Morris died leaving eight children surviving as next of kin. One of these nephews testified for defendant, but evidence showed ill feelings toward one of the plaintiff aunts.

Prior to admission of the will to probate defendant wrote one niece a letter stating in part:

It seems now that unless I can find some other and later Will to the contrary, he has left his modest fortune to me as a Trust, I know, to protect and bless his loved ones and that includes all his nieces and nephews as well as Mae and me."

The evidence established that defendant also wrote another letter of similar import to a nephew who was a physician in Pauls Valley. Before the will was admitted to probate defendant admonished plaintiffs, and particularly Gertrude Hudspeth, to be careful what they might say or do concerning Muncrief, who had no sense and would give everyone trouble. For a long period Muncrief had held an enmity for defendant, because of the belief that defendant had deprived him of educational advantages which testator had offered him years before. Muncrief had made threats upon defendant's life to various persons, and while testator's body was in the funeral home made other threats against defendant if testator was buried at Comanche rather than at Lindsay.

On the date of the first hearing (February 11, 1958) plaintiffs in good faith believed testator had executed a later will than that offered by defendant, and had a right to contest admission of the will to probate. Because of defendant's statements concerning his own safety and the ensuing promise to divide the estate if plaintiffs would stand by him, plaintiffs agreed not to contest the will. The request for the agreement to be reduced to writing was refused by defendant for the reason this might jeopardize the estate. By reason of plaintiffs' fear for defendant's safety and his promise to make equal distribution, plaintiffs forebore their right to insist upon defendant executing a written agreement, or to contest probate of the will, or the decree of distribution under which defendant took the entire estate.

Based upon such findings the trial court made conclusions of law, hereafter summarized, which determined the issues in plaintiffs' favor and provide the basis for the judgment.

Plaintiffs justifiably believed the will offered for probate had been revoked by a later will, and forbearance to prosecute their defense constituted a valuable consideration. In equity, without respect to adequacy of such defense, surrender of the right to assert this defense was a sufficient and binding consideration for any agreement. Plaintiffs surrendered their legal right to contest the probate or distribution of property under a last will which they believed in good faith had been superseded. Under such circumstances plaintiffs were entitled to establish and enforce their rights, although not based upon written contract but upon an oral agreement evidenced by proof which was satisfactory and acceptable to the court in an equitable proceeding.

Equity will decree a constructive trust in favor of those who have given a valuable consideration to one who, as the result of such consideration receives title to land or property. Equity deems a party who takes title and possession of property under such conditions a constructive trustee, for the use and benefit of the parties who gave the consideration.

Defendant was a constructive trustee of the lands, profits and other assets received as principal legatee under the will, and held such properties as trustee for the equal benefit of himself, the half-sisters, and the heirs of the deceased half-brother, Charles E. Morris. Judgment was rendered establishing such constructive trust for use and benefit of the parties. After the motion for new trial was overruled this appeal was perfected.

Five propositions are advanced by defendant in seeking reversal of this judgment. The supporting argument, however, in some instances is made under sub-propositions, and must be considered separately.

We noted heretofore the defendant's special appearance and plea denying the trial court's jurisdiction and venue, and that the question presented was preserved at all stages of the proceedings.

Defendant, resident of and summoned in Stephens County, urges this was a transitory action, since it sought to establish a trust in an estate consisting of real and personal property, and for an accounting. Defendant argues that title to Garvin County land was not the sole subject of the action, but there was also involved personal property and a cause of action for an accounting, which might have resulted in a personal judgment against defendant. Upon this basis defendant concludes that the Garvin County property was not directly but only incidentally involved, hence plaintiffs' cause of action was transitory rather than local, and venue of the action under 12 O.S.1961, § 139, was in Stephens County. As authority for this argument defendant relies upon Mills v. District Court, etc., 187 Okl. 247, 102 P.2d 589, and other cases of similar import.

Although defendant asserts that Mills, supra, is controlling, we are of the opinion the principles there stated are not

decisive of the issue whether the present action is a local or a transitory action. In Mills, supra, the distinction between local and transitory actions is stated: (1) When title to realty is involved and will be affected directly by the judgment the action is local and venue lies in the county where the land lies; (2) When title is only incidental, or relief as to the title is incidental to the main controversy the action is transitory and venue rests in the county where defendant resides, or may be summoned. That action sought to enforce a trust in the residue of an estate, and to require Mills to account for the residue or the value thereof with interest. That case points out that the defendant previously had transferred title to all the property, except small mineral interests, and none of the real or personal property was vested in Mills when the action was brought. Further, the relief sought was against the entire residue of the estate without regard to the character of the property composing same. The disparity between those facts and the matters involved in the present appeal precludes determination of the question of venue under the principles stated in Mills, and similar cases.

Venue in the present case was determinable upon two grounds; viz. (1) allegations that defendants Robbins were indebted to deceased for a loan secured by a mortgage upon real estate in Garvin County and that such defendants be enjoined from making payments upon such obligation, and that title therein be confirmed in plaintiffs and free of claim by defendants; (2) allegations in the petition showing that a considerable portion of the land involved, as to which plaintiffs sought to establish a constructive trust, was situated in Garvin County. By stipulation plaintiffs' second cause of action, for accounting of the proceeds received by defendant Morris, was retained by the trial court pending appeal and requires no further mention.

This issue is determinable under the plain terms of our venue statutes, 12 O.S.1961, §§ 131–141, inclusive, section 131, in pertinent part, provides:

"Actions for the following causes must be brought in the county in which the subject of the action is situated, except as provided in the next section.

"1st, For the recovery of real property, or of any estate, or interest therein, or the determination in any form of any such right or interest.

\* \* \* \* \* \*

"4th, To quiet title, to establish a trust in, remove a cloud on, set aside a conveyance of, or to enforce or set aside an agreement to convey real property."

This statute has been applied consistently in a multitude of cases. It is noteworthy that in Mills, supra, certain oil royalties in Lincoln County retained by defendant at the time of the suit, were mentioned only as "\* \* \* not of particular importance in consideration of the nature of the action \* \* \*."

Prior to that decision this Court in numerous instances had declared that where title to land was *directly* affected by the judgment then venue attached in the county where the land was located. Myers v. Garland, 122 Okl. 71, 251 P. 34; Pasley v. DeWeese, 183 Okl. 424, 82 P.2d 1066. McCulley v. McCulley, 184 Okl. 264, 86 P.2d 786. And, in our decisions subsequent to Mills the same rule is applied. See Ross v. District Court, etc., 199 Okl. 573, 188 P. 2d 861, wherein syllabus one declares royalty to be an interest in realty and states:

"An action for the determination of any form of any right or interest in real property must be brought in the county in which the subject of the action is situated. 12 O.S.1941 § 131, sub. (1)."

In Atchison, Topeka & Santa Fe Ry. Co. v. Superior Court, etc., Okl., 368 P.2d 475, the question is discussed at length. The rule stated is that where the action is local, joinder of an ancillary action of transitory nature did not serve to change the original character of the action.

Plaintiffs' action sought to establish a trust in real property. A substantial portion of the real property involved was in Garvin County. The primary cause of action directly affected the title to that real property. The venue of plaintiffs' action properly was laid in Garvin County, and defendant's special plea to the jurisdiction and venue of the suit properly was overruled.

Defendant also contends plaintiffs' cause of action based upon duress was barred under 12 O.S.1961, § 95(3), the applicable statute of limitations, and that the trial court erred in refusing to so hold. Defendant urges that duress is a species of fraud, which first was mentioned in the amended petition filed October 17, 1962. The acts and conduct of defendant, relied upon to establish duress, allegedly occurred at the time of the first hearing upon the will which defendant offered for probate, more than four years prior to filing the amended petition. Under this view it is asserted any cause of action based upon duress practiced against plaintiffs was barred by limitations.

We are of the opinion this contention lacks substantial merit. The issue of duress was raised by plaintiffs' amended petition, filed by leave of the trial court. Under our procedures, amendments to pleadings are allowed by statute, 12 O.S. 1961, § 317, to promote justice, within the discretion of the trial court. The limitations of the statute against amendments require only that the amendment does not substantially change the cause of action, or prejudice the opposing party. Doyle v. Oklahoma Press Pub. Co., 206 Okl. 254, 242 P.2d 155. And see Krieger v. Marshall, Okl., 292 P.2d 379, to the effect that amendments which even change a cause of action may be permitted, so long as a plaintiff's claim is not substantially changed.

The guidelines for consideration of the issues relating to amendments of pleadings appear in Doyle, supra. The limitation is that a wholly different cause of action may not be asserted. One requirement is that the defendant shall not be required to answer a wholly different legal liability from that stated originally. A further requirement is that where adjudication of the parties' rights under the amended petition is conclusive of issues or rights that would have been determined originally, the amendment properly is allowed. See annotations 74 A.L.R. 1280; 121 A.L.R. 1325; and Mostenbocker v. Shawnee Gas & Electric Co., 49 Okl. 304, 152 P. 82.

Plaintiffs originally alleged defendant's agreement to take and hold title to the property under testator's will in trust for plaintiffs; that they forebore their right to contest such will by reason of defendant's fraudulent promises to accept distribution in trust and share equally with the plaintiffs. The amended petition elaborated upon matters plaintiffs relied upon as showing the inducements by which defendant procured plaintiffs' loyalty to his cause, in return for his promise to take the estate in trust. The cause of action to establish existence of a trust remained the same, in that a judgment upon the original pleadings would have been as conclusive of the rights of the parties as the judgment entered upon the amended petition. No error resulted from granting leave to amend the petition, and the statute of limitations did not bar plaintiffs' action as to the issues raised by the amendment.

Defendant further contends the trial court erred in excluding material testimony offered in defendant's behalf. During the trial defendant offered his wife as a witness for the stated purpose of rebutting testimony concerning statements and acts attributed to her by witnesses for plaintiffs. The trial court sustained objection to the wife testifying, and defendant's counsel made an offer of proof as to the nature of the proffered testimony. The objection to competency of testimony by defendant's wife was sustained under the application of 12 O.S.1961, § 385(3), which makes a wife

incompetent to testify for her husband, other than for statutory exceptions not applicable.

 Recognizing that we have not decided the question, defendant contends that some jurisdictions apply the rule that, where one spouse is a party, the other is permitted to testify in order to contradict third person's testimony relating to what the witness said or did. See 97 C.J.S. Witnesses § 87. Defendant urges such rule is sound and should be adopted by this Court, citing and quoting from the early Illinois decision in Stephens v. Collision, 256 Ill. 238, 99 N.E. 914. We are not advised as to the provisions of the Illinois statute, or the grounds upon which such exception to the rule was placed.

To engraft an exception upon the statutory inhibition against one spouse testifying for the other, who is a party to an action, would constitute judicial legislation. This is declined consistently as not being the prerogative of this Court. Additionally, however, we point out that other evidence in this record substantially reflects all matters which defendant allegedly sought to rebut by the proffered testimony of defendant's spouse. The proffered testimony would have been cumulative at best.

Defendant's fourth proposition urges reversible error on part of the trial court in overruling the demurrer to the plaintiffs' restatement and amended petition. The original petition asserted existence of an express trust based upon an alleged oral agreement. Demurrer to the petition as violative of both the statute of frauds, and statute governing conveyances was sustained. Plaintiffs' amended petition set forth a written agreement based upon a letter from defendant to a nephew and wife. Plaintiffs thereafter acknowledged the letter relied upon was not sufficient to satisfy the statute of frauds, and the trial court granted leave to file further amendment. In this latter pleading, discussed heretofore, plaintiffs sought to establish a constructive trust.

Defendant's claim of error in refusal to sustain his demurrer to this petition is threefold. The first argument again urges plaintiffs' cause of action based upon duress was barred by the statute of limitations. Defendant says that when allegations of fraud based upon duress are stricken from the petition, because barred by limitations, the remaining allegations concern only an alleged oral contract to hold real property in trust and to convey an interest to plaintiffs. Thus defendant concludes the basis of plaintiffs' claim, an alleged oral contract to convey real property, violates the Statute of Frauds, 15 O.S. 1961, § 136, and 16 O.S. 1961, § 4, our statute governing conveyances. Already having determined the cause of action asserted in the last amended petition was not barred by limitations, we consider only whether the agreement relied upon was violative of the statutory provisions above mentioned.

 This Court consistently has applied the rule, based upon public policy, that voluntary compromise of conflicting claims to a decedent's estate by family settlement contract entered into with full understanding of the facts is favored in law and such agreements are encouraged and ordinarily are upheld. Vinson v. Cook, 76 Okl. 46, 184 P. 97; Dowell, Adm. v. Dowell, Okl., 316 P.2d 850. Generally, as to consideration for such family compromises see annotation 6 A.L.R. 555. 38 A.L.R. 734; 81 A.L.R. 1187.

In urging that plaintiffs' action sought to enforce a claim violative of the Statute of Frauds defendant cites Abraham v. McSoud, 188 Okl. 409, 109 P.2d 822; Oliphant v. Rogers, 186 Okl. 70, 95 P.2d 887, and Chambers v. Savage, 185 Okl. 251, 91 P.2d 88, and earlier decisions cited in these cases. Without extended discussion, each case reflects distinguishing features which preclude precise application of the rules announced to the present appeal.

In the Abraham case plaintiffs plead a parol contract to convey land, which was invalid under the statute of frauds, and

also because such agreement was an attempt to create *an express trust* by oral contract and so invalid under (60 O.S.1961, § 136) the statute of uses and trusts.

In Oliphant, supra, it is recognized that constructive trusts may be established by parol where based upon satisfactory proof. The limitation upon enforcement of such a trust requires that some element of positive fraud accompany the promise and constitute the means by which acquisition of legal title is wrongfully consummated. This limitation was expressed in Reed v. Peck & Hills Furn. Co., 93 Okl. 212, 220 P. 900.

Chambers v. Savage, supra, involved an action to enforce an alleged oral agreement relating to division of the estate of a restricted Osage Indian, consisting of land, Osage headright interests and cash. During pendency of litigation over admission of a will to probate the parties negotiated for settlement. Plaintiffs reduced the terms of compromise to writing, but defendant refused to sign the agreement or carry out terms of the settlement. Plaintiffs then sued to enforce the oral agreement. The petition alleged it was the parties' intention that the settlement should be carried out by the court, and the title to specific realty be vested by decree of the court. The purported oral family settlement of the will contest, and agreement for division of both real and personal property, was decreed to be within the statute of frauds and unenforceable. Recourse to the language of the decision indicates that the arguments in the present case were derived from statements appearing therein. In Savage, supra, our Court cited and relied upon Stahl v. Stevenson, 102 Kan. 447, 171 P. 1164, as authority for the statement that "sale", as used in the statute of frauds, is broad enough to cover any agreement under which passing of an interest in realty is accomplished. The language is out of context, and does not support the conclusion based thereon.

In Stahl plaintiff sought recovery of one-third of an estate consisting of real and personal property under an oral agreement, supported by consideration, that the grandfather would leave plaintiff the same interest in his estate that she would have received by the law of descent and distribution. The fact that part of the estate consisted of land was said not to bring the oral contract within the statute of frauds because, although the action sought recovery of one-third of specific property, this resulted only from an incidental rather than an essential feature of the case. The Kansas court recognized that a promise to convey specific land was within the statute of frauds. But it was pointed out that the contract did not necessarily concern real property, and when the contract was made it was possible it might have been carried out without passing of any title to realty.

The same distinction made by the Kansas court is applicable here. The principle announced in Savage, supra, is correct as to the issue there determined, but cannot be applied as controlling in the present appeal.

 We are of the opinion the principles determinative of the issues presented are convincingly stated in Bunte v. Hasley, 122 Okl. 81, 251 P. 591; Teuscher v. Gragg, 136 Okl. 129, 276 P. 753, 66 A.L.R. 143; Powell v. Chastain, Okl., 318 P.2d 859, and Peyton v. McCaslin, Okl., 417 P.2d 316.

In Bunte, supra, syllabus 3 states:

"Where it is made to appear by evidence, clear, decisive, and unequivocal, that the devisee of real property by acts, words, and conduct led children of the testator to believe that if they desisted from their expressed intention to contest the will they would receive at the death of the devisee as much as they would have inherited from the testator but for the will, and by reason thereof the intended contest was by them abandoned and quitclaim deeds made by them to the devisee in the will to correct errors in the procedure antecedent to the probation of the same, equity will not permit the devisee to gain an advantage by reason of the action of such heirs under such impression so made, and will not permit the devisee to assert that the

abandonment of the intended contest of the heirs was without consideration, in that they could not have successfully contested the will, but will treat the property, the legal title to which was so acquired by reason of the will, as stamped with a constructive trust to the extent such heirs would have inherited an interest therein but for the will."

In Teuscher, supra, syllabi 2 and 3 state:

"The holder of the legal title to lands will in equity be charged as trustee, where it was acquired by fraud or under such circumstances as to render it inequitable for him to retain."

"Where a devise is made to one upon his parol promise to hold it in trust for another, a trust arises, and the statute of frauds is not allowed as a defense. Brison v. Brison, 75 Cal. 525, 17 P. 689, 7 Am.St.Rep. 189, and Easley v. Easley, 117 Okl. 227 at page 229, 245 P. 831."

In the body of Chastain, supra, the principles pertaining to trusts are stated:

"Constructive trusts are those raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such relation, and often directly contrary to the intention of the one holding the legal title. All instances of constructive trusts may be referred to what equity denominates 'fraud', either actual or constructive, including omissions in violation of fiduciary obligations. If one obtains the legal title to property by fraud or by violation of confidence or fiduciary relationship, or in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by imposing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner. McCaleb v. McKinley, [80 Okl. 38, 194 P. 105] supra. In Rollow v. Taylor, 104 Okl. 275, 231 P. 224, the court said:

' "Constructive trusts" are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by him who holds it.' "

In McCaslin the rules above mentioned relating to constructive trusts are reiterated.

Without further discussion of the principles involved, or citation of other authorities, we are convinced that the trial court did not err in overruling defendant's demurrer to plaintiffs' amended petition.

Defendant's fifth contention is that the trial court's judgment establishing a constructive trust is not supported by the clear, unequivocal and conclusive evidence, and is contrary both to the weight of the evidence and to the law. The primary argument involves the asserted failure of the evidence to clearly and unequivocally prove existence of the trust. This provides the vehicle for five sub-propositions or sub-divisions of argument, each of which turns entirely upon the weight and credibility and meaning of the evidence as construed by defendant.

The impossibility of narrative summation of the testimony the trial court considered before rendering judgment was mentioned earlier. We do consider two salient facts in view of defendant's argument that plaintiffs did not in good faith believe the testator had executed a later will and so had no substantial ground for contest. In this connection we consider it noteworthy that the unbiased testimony of the county judge of Murray County, in and of itself, was sufficient to support the trial court's findings of fact relative to testator's execution of a later will. The evidence relative to execution and existence of a second will was sufficiently clear and convincing to provide a sound basis for plaintiffs' claim that they surrendered a positive right by agreement not to contest the will offered for probate by defendant.

· In this connection defendant also urges that plaintiffs did not give up the right to demand the agreement with defendant be reduced to writing, or abandon the right to contest distribution of the estate because of any fear for defendant's safety. We consider the thoroughly contradictory testimony of defendant himself, which the trial court properly noted, as dispositive of this argument. In Peyton v. McCaslin, supra, we said:

> "* * * The onus of establishing a constructive trust lies upon him who seeks its enforcement, and before a court will be warranted in making a decree therefor, the evidence must be clear, unequivocal and decisive. But each trial, like each case, must be considered in the light of its own peculiar developments and circumstances, and, accordingly, the rule must be applied intelligently. As the well-known axiom states, the preponderance of the evidence does not mean the greater number of witnesses testifying to a fact, but means that which, to the mind of the trier of the fact, or the seeker of the truth, seems most convincing and more probably true."

The varied arguments advanced by defendant could provide unduly extended discussion. The matters dealt with above are determinative of the basic and controlling issues presented on appeal. Having reviewed this record most carefully we are convinced the judgment rendered is not clearly against the weight of the evidence.

Judgment affirmed.

IRWIN, V. C. J., and BLACKBIRD, LAVENDER, BERRY and McINERNEY, JJ., concur.

JACKSON, C. J., and DAVISON and HODGES, JJ., dissent.

WILLIAMS, J., not voting.